## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JANETTE BARR-RHODERICK**,
as legal guardian and next friend of
**CHRISTINA JANETTE MAY**,
a minor, and for similarly situated
minor students,

        Plaintiffs,

        vs.                                No. CIV 04-0327 MCA/ACT

**THE BOARD OF EDUCATION OF
ALBUQUERQUE PUBLIC SCHOOLS**,
**BETH EVERITT**, as Superintendent of Schools,
**DEBI HINES**, as Director of Special Education,
**BRENDA HEIMAN**, **NANCY KILPATRICK**,
**RON WILLIAMS**, as former Directors of
Special Education,

        Defendants.

## MEMORANDUM OPINION AND ORDER

      **THIS MATTER** comes before the Court on the ***Individual Defendants' Motion to Dismiss ADA, Section 504, and IDEA Claims*** [Doc. No. 11] filed on May 17, 2004; ***Plaintiff's Motion to Amend Complaint*** [Doc. No. 32] filed on November 12, 2004; ***Defendant Albuquerque Public Schools' Motion for Leave to File Surreply in Response to Plaintiffs' Reply in Support of Its Motion for Leave to Amend the Complaint*** [Doc. No. 51] filed on January 18, 2005; and the Court's *sua sponte* inquiry pursuant to Fed. R. Civ.

P. 4(m) regarding service of process on Defendant Heiman.  Having considered the pleadings of record, the relevant law, and otherwise being fully advised in the premises, the Court grants the motion of Defendants Everitt, Hines, Kilpatrick, and Williams (collectively "the individual Defendants") to dismiss all claims against them in their official capacity, as well as the claims asserted against them in their personal capacity under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794a(a)(2); and the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 to 1487.  As a result of this ruling, the only remaining claims against the individual Defendants are the constitutional claims for violation of due process and equal protection asserted against them in their personal capacity under 42 U.S.C. § 1983.

The Court grants Plaintiffs' motion to amend their complaint in part so as to allow the addition of Angelica Terrazas for her son, Astolfo Terrazas, as a named Plaintiff.  Such an amended pleading must be filed no later than February 10, 2005.  The Court denies Plaintiffs' motion in part insofar as the proposed *First Amended Complaint* seek to reassert any official-capacity claims or personal-capacity claims under the ADA, Section 504, or the IDEA against the individual Defendants.  In reaching this ruling, the Court does not allow or rely upon new issues or claims raised by Plaintiffs' for the first time in their reply brief [Doc. No. 42].  Accordingly, Defendant APS's motion to file a surreply is denied as moot.

In addition, Plaintiff's are directed to show cause in writing by no later than February 8, 2005, as to why their claims against Defendant Heiman should not be dismissed without prejudice for failure to effect service of process within the 120-day time period specified in

Fed. R. Civ. P. 4(m). Finally, both parties will be afforded the opportunity to present supplemental briefing on the pending cross-motions regarding class certification and the motion for summary judgment based on qualified immunity, insofar as these motions are affected by the amendment of Plaintiffs' pleading.

## I.   <u>BACKGROUND</u>

Plaintiffs Janette Barr-Rhoderick, as legal guardian and next friend of Christina Janet May, filed this civil-rights action on March 23, 2004, seeking damages as well as injunctive and declaratory relief for a proposed class of students with disabilities who enrolled at Albuquerque Public Schools (APS) and are adversely affected by an alleged policy or custom of deliberately and programmatically reducing hours of school attendance without notice or a hearing for reasons that are not based on an individualized determination of each student's needs. [Doc. No. 1.] Plaintiff May alleges that she was adversely affected by such a policy when she enrolled as an APS student at Taft Middle School in November 2002 and allegedly was subjected to six (6) shortened school days before the policy in question was changed. It is not disputed that Plaintiff May has exhausted her administrative remedies prior to filing suit. [Doc. No. 1, ¶ 3; Doc. No. 8, ¶ 3; Doc. No. 20, at 2.]

Plaintiffs' claims arise under four federal statutes and two constitutional provisions. One of these statutes is 42 U.S.C. § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable

to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

This statute is not an independent source of substantive rights, but rather a mechanism for enforcing federal rights conferred elsewhere. See Graham v. Connor, 490 U.S. 386, 393-94 (1989). In this case, the specific rights which form the basis for Plaintiffs' claims under 42 U.S.C. § 1983 are those guaranteed by the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. [Doc. No. 1, at ¶¶ 1, 47, 48.]

Plaintiffs also allege violations of three statutes that operate independently of 42 U.S.C. § 1983. The first of these statutes is Section 504 of the Rehabilitation Act. [Doc. No. 1, at ¶¶ 1, 44.] This statute provides that: "No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title [29], shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...." 29 U.S.C. § 794. The statute is implemented by regulations directed at "handicapped services offered by elementary and secondary public schools" which require, among other things, "'free appropriate public education[s]' for all handicapped students." New Mexico Ass'n of Retarded Citizens v. New Mexico, 678 F.2d 847, 852 (10th Cir. 1982) (quoting 34 C.F.R. § 104.33(a) (1980)).

These regulations overlap with the requirements of the IDEA, see id. at 853, and Plaintiffs claim that Defendants violated the IDEA as well. [Doc. No. 1, at ¶¶ 1, 46.] The

IDEA provides federal funding to state and local authorities that assume responsibility for effecting a policy that assures a "free appropriate public education" to all eligible children with disabilities.  See 20 U.S.C. § 1412(a).  Among other things, such policies are implemented by requiring local educational agencies to annually develop an individualized education program (IEP) for each eligible child that states the child's present level of educational functioning, articulates measurable annual goals as well as shorter-term objectives, and provides for placement in the least restrictive environment.  See 20 U.S.C. §§ 1401(8), 1412(a)(5), 1414(d); 34 C.F.R. pt. 300.

These requirements, in turn, overlap with those set forth in Title II of the ADA, which Plaintiffs also claim was violated in this case.  [Doc. No. 1, at ¶¶ 1, 45.]  Title II of the ADA is broadly directed at protecting qualified individuals with disabilities from discrimination, exclusion, or denial of benefits with respect to public services, programs, or activities.  See 42 U.S.C. § 12132. Congress intended this statute to apply to all "public entities" regardless of whether or not they receive federal funding.  See 42 U.S.C. §§ 12101(b)(4), 12131; Thompson v. Colorado, 278 F.3d 1020, 1026 (10th Cir. 2001); Davoll v. Webb, 194 F.3d 1116, 1142 (10th Cir. 1999).

Defendant Board of Education is the public entity which controls and supervises APS pursuant to state law and may be subject to the requirements of Title II of the ADA on this basis.  APS is also a recipient of federal financial assistance and is therefore subject to the requirements of the IDEA and Section 504 of the Rehabilitation Act.  [Doc. No. 1, ¶ 4; Doc. No. 8, ¶ 4.]

Defendant Beth Everitt became the Superintendent of APS on July 1, 2003, and may have formerly served as a member of a four-person team of APS superintendents during the 2002-2003 school year.  [Doc. No. 22, Ex. H; Doc. No. 23, Ex. 5.]  Defendant Debi Hines became the Director of APS's Department of Special Education on July 3, 2001, and may have served as a supervisor in that department, either jointly or on an interim basis, since the 1999-2000 school year.  [Doc. No. 22, Ex. F; Doc. No. 23, Ex. 4.]  Defendant Brenda Heiman allegedly was a supervisor in the Special Education Department prior to January 2000.  Defendant Nancy Kilpatrick was a supervisor in the Special Education Department in the late 1990s.  Defendant Ron Williams was the Director of APS's Department of Special Education in the late 1980s and early 1990s.   [Doc. No. 1, ¶ 6; Doc. No. 8, ¶ 6.]

On May 17, 2004, the four individual Defendants moved to dismiss Plaintiffs' ADA, Section 504, and IDEA claims on the grounds that the scope of liability under these statutes does not extend to individual employees in their personal capacity.   The individual Defendants' motion also seeks the dismissal of any claims against them in their official capacity on the grounds that such official-capacity claims unnecessarily duplicate Plaintiffs' claims against Defendant Board of Education.  [Doc. No. 11, 12.]  On August 20, 2004, the individual Defendants moved to dismiss Plaintiffs' claims against them under 42 U.S.C. § 1983 on grounds of qualified immunity.   Defendant Heiman was not included in the individual Defendants' motions because the record reflects that she has not yet been served with Plaintiff's *Complaint*.  The time for doing so has expired.  See Fed. R. Civ. P. 4(m).

On November 12, 2004, Plaintiffs moved for leave to file a *First Amended Complaint* that adds a second set of Plaintiffs.  [Doc. No. 32, 33.]  On December 14, 2004, the parties filed cross-motions with respect to the issue of class certification.  [Doc. No. 37, 38, 39, 40.] Defendant APS moved to file a surreply regarding the motion to amend on January 18, 2005.

At this juncture, the Court will rule on the individual Defendants' motion to dismiss and Plaintiffs' motion for leave to file their proposed *First Amended Complaint*.  I defer ruling on the other pending motions in order to afford the parties an opportunity for supplemental briefing in light of the rulings made in this *Memorandum Opinion and Order*.

## II.    ANALYSIS

### A.    Motion to Dismiss Claims Against Individual Defendants

The individual Defendants (Everitt, Hines, Kilpatrick, and Williams) move to dismiss all of the claims brought against them in their official capacity, as well as the ADA, Section 504, and IDEA claims brought against them in their personal capacity.  These four Defendants contend that Plaintiffs' claims against them in their official capacity warrant dismissal because the Board of Education is the only proper Defendant as to these claims. The individual Defendants further contend that they are not proper Defendants in their personal capacity with respect to Plaintiffs' claims under Title II of the ADA, Section 504 of the Rehabilitation Act, and the IDEA because, as a matter of law, these statutes do not extend the scope of liability to cover individual employees sued in their personal capacity.

Plaintiffs concede that, as a matter of law, the individual Defendants cannot be held liable in their personal capacity for violating the IDEA.  Plaintiffs also offer no authority in

support of their Section 504 claim against the individual Defendants in their personal capacity.  With respect to their ADA claim, however, Plaintiffs rely on the minority view expressed by the Eleventh Circuit in Shotz v. City of Plantation, 344 F.3d 1161 (11th Cir. 2003), that certain claims under the ADA's provisions regarding retaliation, 42 U.S.C. § 12203(a), may extend liability to individuals sued in their personal capacity.  Plaintiffs also suggest that a ruling on the individual Defendants' motion should be deferred "until such time as discovery has occurred and the motives for the individual Defendants' failure to act are explored."  [Doc. No. 14.]

## 1.    Standard of Review

I do not agree that the individual Defendants must wait until the completion of discovery before the Court can rule on the viability of Plaintiffs' claims under Fed. R. Civ. P. 12(b)(6).  Under that rule, the Court may dismiss a complaint for failure to state a claim upon which relief may be granted at any time.  See Fed. R. Civ. P. 12(h)(2).  Dismissal on these grounds may occur sua sponte or upon a defendant's motion.  See Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001) (concluding that "sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts").  When requested in a defendant's motion, dismissal under this rule is appropriate only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir.1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  Sua sponte dismissal in this context is only

appropriate when it is patently obvious that the plaintiff cannot prevail on the facts alleged, and allowing an opportunity to amend would be futile.  See Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir.1991); Curley, 246 F.3d at 1284.

"The court's  function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir.1991).   Accordingly, all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party.  GFF Corp., 130 F.3d at 1384.  Although Plaintiffs' pleadings are to be liberally construed, mere conclusory allegations without supporting factual averments will not suffice. See Brown v. Zavaras, 63 F.3d 967, 972 (10th Cir. 1995).

### 2.    Claims Against Individual Defendants in Their Official Capacity

In the context of civil-rights litigation, the Supreme Court has explained the distinction between being personal-capacity suits and official-capacity suits as follows:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law.  See, e.g., Scheuer v. Rhodes, 416 U.S. 232, 237-238 (1974).  Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n. 55 (1978).   As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. Brandon [v. Holt] 469 U.S. [464], 471-472 [(1985)].  It is not a suit against the official personally, for the real party in interest is the entity.

Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).

In this case, the individual Defendants seek the dismissal of Plaintiffs' claims against them in their official capacity on the grounds that such claims simply duplicate the claims already asserted against the institutional entity, Defendant Board of Education of APS.  In response to the individual Defendants' motion, Plaintiffs provide no explanation or authority as to why it is necessary to name the individual Defendants in their official capacity in this case.  In particular, there is no contention that this case presents circumstances in which the institutional entity cannot be named or an official must be named in its place in order to avoid Eleventh Amendment immunity and fit within the doctrine expressed in Ex Parte Young, 209 U.S. 123, 158-159 (1908).  See ANR Pipeline Co. v. LaFaver, 150 F.3d 1178, 1188 n.10 (10th Cir. 1998).  For these reasons, I conclude that Plaintiffs' claims against the individual Defendants in their official capacity should be dismissed at this juncture in order to avoid redundancy and unnecessary confusion of the issues.  The dismissal of the official-capacity claims is without prejudice, and my ruling on these claims is subject to reconsideration in the event that Defendants raise a defense such as Eleventh Amendment immunity that might make the institutional entity unavailable as a defendant.

### 3.        **Claims Against Individual Defendants in Their Personal Capacity**

I also conclude that Plaintiffs' ADA, Section 504, and IDEA claims against Defendants Everitt, Hines, Kilpatrick, and Williams in their personal capacity must be dismissed at this juncture.  This conclusion follows the majority view expressed by other courts and accords with the principles of statutory interpretation set forth by the Supreme

Court in Barnes v. Gorman, 536 U.S. 181 (2002), and United States Dep't of Transp. v. Paralyzed Veterans of Am., 477 U.S. 597 (1986).

Section 504 of the Rehabilitation Act and the relevant provisions of the IDEA invoke "Congress's power under the Spending Clause, U.S. Const., Art. I, § 8, cl. 1, to place conditions on the grant of federal funds." Barnes, 536 U.S. at 185-86; see Sellers v. The Sch. Bd. of the City of Manassas, 141 F.3d 524, 531 (4th Cir. 1998) (" IDEA is a joint federal-state program enacted under Congress's spending power."); Garcia v. S.U.N.Y. Health Sciences Ctr., 280 F.3d 98, 113 (2d Cir. 2001) (concluding that "§ 504 was enacted pursuant to Congress's authority under the Spending Clause of Article I"). As such, these statutes are characterized as "'much in the nature of a contract: in return for federal funds, the [recipients] agree to comply with federally imposed conditions.'" Barnes, 536 U.S. at 186 (quoting Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 17 (1981)); see also Paralyzed Veterans, 477 U.S. at 605-06. Under the contract-law principles applied by the Supreme Court in this context, the proper defendant in a suit under such Spending Clause legislation is the public entity, program, or activity that is the recipient of the federal funds, not its employees.

This conclusion follows from the basic distinction between the *recipients* of federal funds and the *beneficiaries* of such funds which the Supreme Court articulated in Paralyzed Veterans, 477 U.S. at 605-11, and its progeny. Under this distinction, the liability that may be imposed by the Spending Clause legislation at issue here does not follow the federal funding "'past the recipient to those who merely benefit from the aid.'" United States v.

-11-

LaHue, 170 F.3d 1026, 1029 (10th Cir. 1999) (quoting Paralyzed Veterans, 477 U.S. at 607);

accord Gallagher v. Croghan Colonial Bank, 89 F.3d 275, 278 (6th Cir.1996).   Thus,

"[e]mployees of the recipients of federal financial assistance are not in themselves the

recipients of such assistance."   Grzan v. Charter Hosp., 104 F.3d 116, 119-20 (7th Cir.

1997).   Because they are not recipients of such assistance, such employees are not subject

to suit in their personal capacity under the Spending Clause legislation at issue here.   See id.

The Tenth Circuit has pointed out that "if the statutes were construed to extend to all

those who receive an indirect economic benefit from the federal assistance, '[t]he statutory

"limitation" on [the anti-discrimination statute's] coverage would virtually disappear, a result

Congress surely did not intend.'"   LaHue, 170 F.3d at 1030 (quoting Paralyzed Veterans, 477

U.S. at 609).   Allowing such statutory limitations to disappear in this manner by ignoring the

distinction between *recipients* and *beneficiaries* of federal funds would also run contrary to

the principles articulated in Barnes, 536 U.S. at 186-87.   Under these principles, the

conditions that Congress intends to impose on the grant of federal funds must be stated

unambiguously so as to support the conclusion that the recipient of the funds accepted those

conditions knowingly and voluntarily.   The Spending Clause legislation at issue in this case

does not set forth an unambiguous condition that would impose liability on individual

employees in their personal capacity.   Based on the authorities cited above, I conclude as a

matter of law that neither Section 504 of the Rehabilitation Act nor the relevant provisions

of the IDEA provide a basis for holding the individual Defendants liable in their personal

capacities under the circumstances alleged in this case.

Plaintiffs concede this point with respect to their IDEA claim against the individual Defendants in their personal capacities, and they offer no authority in support of their Section 504 claim against these Defendants in their personal capacities. Nevertheless, Plaintiffs assert that their personal-capacity claims against these Defendants pursuant to Title II of the ADA are distinguishable.

It is true that in enacting Title II of the ADA, Congress did not expressly rely on the Spending Clause and instead invoked its authority under the Commerce Clause and Section 5 of the Fourteenth Amendment. See 42 U.S.C. § 12101(b)(4); Thompson, 278 F.3d at 1026; Davoll, 194 F.3d at 1142. In addition, the Tenth Circuit has not directly addressed the question of whether Title II of the ADA provides for personal-capacity suits of this nature.

In the context of employment discrimination, however, the Tenth Circuit has concluded that Title I of the ADA precludes personal capacity suits against individuals who do not otherwise qualify as "employers" under the relevant statutory definition of that term. See Butler v. City of Prairie Village, 172 F.3d 736, 744 (10th Cir. 1999). While Butler is distinguishable to some degree because it involved Title I of the ADA rather than Title II, the principles of statutory interpretation used in that case lead to the same conclusion with regard to the issue presented here.

In Butler, 172 F.3d at 744, the Tenth Circuit drew a parallel between Title I of the ADA and Title VII of the Civil Rights Act, noting that the two statutes share a common features that operate to preclude employment-discrimination suits against individual employees in their personal capacity. In the present case, I draw a similar parallel between

-13-

Title II of the ADA and two other statutes, namely Section 504 of the Rehabilitation Act and

Title VI of the Civil Rights Act.  As noted by the Supreme Court,

> Section 203 of the ADA declares that the "remedies, procedures, and rights set
> forth in [§ 505(a)(2) of the Rehabilitation Act] shall be the remedies,
> procedures, and rights this subchapter provides" for violations of § 202.  42
> U.S.C. § 12133.  Section 505(a)(2) of the Rehabilitation Act, in turn, declares
> that the "remedies, procedures, and rights set forth in title VI of the Civil
> Rights Act of 1964 ... shall be available" for violations of § 504, as added, 92
> Stat. 2983, 29 U.S.C. § 794a(a)(2).  Thus, the remedies for violations of § 202
> of the ADA and § 504 of the Rehabilitation Act are coextensive with the
> remedies available in a private cause of action brought under Title VI of the
> Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., which prohibits racial
> discrimination in federally funded programs and activities.

Barnes, 536 U.S. at 185.  For these reasons, it is appropriate to interpret the remedies and

procedures available under Title II of the ADA in a manner that parallels the interpretation

of Section 504 of the Rehabilitation Act and Title VI of the Civil Rights Act.

As noted above, Section 504 and Title VI are Spending Clause legislation and do not

provide a basis for personal-capacity suits against individual employees.  See Grzan, 104

F.3d at 119-20.  Thus, insofar as Title II of the ADA incorporates the same remedies,

procedures, and rights available under Section 504 and Title VI, see 42 U.S.C. § 12133, the

former statute does not provide a basis for imposing liability on individuals in their personal

capacity.  Cf. Butler, 172 F.3d at 744 (drawing a similar conclusion based on parallels

between Title I of the ADA and Title VII of the Civil Rights Act).

Such an interpretation accords with the plain language of Title II, which only imposes

duties on "public entities."  See 42 U.S.C. § 12132.  "That term, as it is defined within the

statute, does not include individuals."  Alsbrook v. City of Maumelle, 184 F.3d 999, 1008

n.8 (8th Cir. 1999) (en banc) (citations omitted); accord Miller v. King, 384 F.3d 1248,

1276-78 (11th Cir. 2004); Garcia, 280 F.3d at 107; Khan v. Albuquerque Pub. Sch., No. CIV

03-118 JP/RLP, slip. op. at 5-7 (D.N.M. May 22, 2003) (memorandum opinion and order

dismissing ADA claims against individual defendant).

    Plaintiffs attempt to avoid this conclusion by pointing out that some courts have

allowed the pleading of a retaliation claim against individual defendants in their personal

capacity under a different provision of the ADA that is not contained in Title II of that

statute. See, e.g., Shotz, 344 F.3d at 1179-80 (interpreting 42 U.S.C. § 12203(a)). In Shotz,

344 F.3d at 1177, a panel of the Eleventh Circuit found the ADA's retaliation provision to

be "inscrutable," and "Congress's intent cryptic and imprecise," with respect to whether the

scope of liability is defined by the "rights creating" language in that provision, 42 U.S.C. §

12203(a), or by the language setting forth the available remedies and procedures, 42 U.S.C.

§ 12203(c). If the latter provision determines the scope of liability, then the Court would

simply follow the rule applied in Spending Clause legislation such as Title VI and Section

504, under which individuals cannot be held liable in their personal capacities. See Shotz,

344 F.3d at 1171. The Shotz court chose a more complicated route, however, and arrived

at the conclusion that the ADA's retaliation provision was intended to go further than the

Spending Clause legislation referenced in Title II and could provide an independent basis for

imposing liability on persons in their individual capacity. See id. at 1179-80.

    In reaching this conclusion, the Shotz court did not address the constitutional

questions presented by such an interpretation of the statute, i.e., whether the retaliation

-15-

provision so construed is a valid exercise of congressional power under the Commerce Clause or Section 5 of the Fourteenth Amendment.  Cf. Thompson, 278 F.3d at 1034 (concluding, in context of Eleventh Amendment immunity, that a particular application of Title II of the ADA was not a valid exercise of congressional power under Section 5 of the Fourteenth Amendment); Alsbrook, 184 F.3d at 1010 (same); Garcia, 280 F.3d at 109-10 (same); Miller, 384 F.3d at 1275-76 (same); Klingler v. Director, Dep't of Revenue, 366 F.3d 614, 616-20 (8th Cir. 2004) (concluding that a particular application of Title II of ADA was not valid exercise of congressional power under the Commerce Clause); McCarthy v. Hawkins, 381 F.3d 407, 435 (5th Cir. 2004) (Garza, J., concurring in part and dissenting in part) (expressing a similar view).  But cf. Tennessee v. Lane, 541 U.S. 509, 124 S. Ct. 1978, 1993 (2004) (declining to consider Title II of the ADA in the context of public education but finding that a portion of the statute "unquestionably is valid § 5 legislation as it applies to the class of cases implicating the accessibility of judicial services").  It is a basic principle of statutory interpretation that "'where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, [the Court's] duty is to adopt the latter.'"  Jones v. United States, 526 U.S. 227, 239 (1999) (quoting United States ex rel. Attorney General v. Delaware & Hudson Co., 213 U.S. 366, 408 (1909)).

        In this case, I find it unnecessary to decipher the congressional intent behind the ADA's retaliation provision, or the precedential value of recent opinions concerning the statute's constitutionality, because Plaintiffs have not pled an ADA retaliation claim in their

*Complaint* or the proposed *First Amended Complaint*.  "[N]ormally a court need not grant leave to amend when a party fails to file a formal motion."  Calderon v. Kan. Dept. of Soc. and Rehab. Servs., 181 F.3d 1180, 1186 (10th Cir. 1999) (citing Fed. R. Civ. P. 7(b)(1)); accord Glenn v. First Nat'l Bank, 868 F.2d 368, 370-71 (10th Cir. 1989).  Merely alluding to the possibility of amending their ADA claim in their response to the individual Defendants' motion to dismiss does not amount to such a formal motion by the Plaintiffs in this case, especially considering that such an amended ADA claim is not included in the proposed *First Amended Complaint* which was filed several months after the completion of briefing on the motion to dismiss.  See Calderon, 181 F.3d at 1187; Glenn, 868 F.3d at 370; cf. Green Country Food Market, Inc. v. Bottling Group, LLC, 371 F.3d 1275, 1279-81 (10th Cir. 2004) ("The liberalized pleading rules . . . do not permit plaintiffs to wait until the last minute to ascertain and refine the theories on which they intend to build their case."); Evans v. McDonald's Corp., 936 F.2d 1087, 1091 (10th Cir. 1991) (same).

Because Plaintiffs have not pled (or properly sought leave to plead) an ADA retaliation claim in this case, Shotz is distinguishable.  The Eleventh Circuit has expressly held that the reasoning of Shotz does not extend to claims under 42 U.S.C. § 12132, which only imposes liability on "public entities."  See Miller, 384 F.3d at 1276-78 .  Therefore, Plaintiffs ADA, Section 504, and IDEA claims against the individual Defendants in their personal capacity must be dismissed.

Plaintiffs cannot avoid this conclusion by attempting to reassert their ADA, Section 504, and IDEA claims against the individual Defendants under the guise of 42 U.S.C. §

-17-

1983.  The Tenth Circuit has expressly held that Section 1983 "may not be used to remedy IDEA violations."  Padilla v. Sch. Dist. No. 1, 233 F.3d 1268, 1273 (10th Cir. 2000).  In support of this holding, the Tenth Circuit reasoned that since Congress amended the IDEA in 1986, the Supreme Court has nevertheless cited the statute on at least two occasions "as an example of an exhaustive legislative enforcement scheme that precludes § 1983 causes of action."  Id. (citing  Blessing v. Freestone, 520 U.S. 329, 347-48 (1997), and  Wright v. City of Roanoke Redevelopment and Housing Auth., 479 U.S. 418, 423-24 (1987)).  The Supreme Court's recent opinion in Gonzaga v. Doe, 536 U.S. 273, 289-90 (2002), lends further support to this conclusion.

Plaintiffs also may not use 42 U.S.C. § 1983 as a mechanism for asserting claims against the individual Defendants for violating Section 504 of the Rehabilitation Act or Title II of the ADA.  See Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2001) (collecting cases).   Like the IDEA, the ADA and the Rehabilitation Act provide "'specific comprehensive internal enforcement mechanism[s] to protect  the rights'" of the statutes' intended beneficiaries,  and "'Congress intended to foreclose resort to the more general enforcement provisions of section 1983 to vindicate the rights created by'" these statutes. Id. (quoting Lollar v. Baker, 196 F.3d 603, 609-10 (5th Cir.1999)); see also Alsbrook, 184 F.3d at 1011; Holbrook v. City of Alpharetta, 112 F.3d 1522, 1531 (11th Cir.1997); Sellers, 141 F.3d at 530-32.  Plaintiffs' claims under 42 U.S.C. § 1983 are therefore limited to the Fourteenth Amendment due process and equal protection violations alleged in the *Complaint*

or the proposed *First Amended Complaint*.  Plaintiffs' other claims against the individual

Defendants are subject to dismissal at this juncture.

### B.    Plaintiffs' Motion to Amend the Complaint

Plaintiffs propose to amend their complaint to add a second pair of named Plaintiffs,

Angelica Terrazas for her son, Astolfo Terrazas.  According to the proposed *First Amended*

*Complaint*, Astolfo Terrazas enrolled as an APS student in 1990 and is also adversely

affected by the alleged policy or custom of reducing hours of school attendance for certain

categories of students with disabilities.  The proposed Terrazas Plaintiffs have not exhausted

their administrative remedies under the IDEA and Section 504; however, they allege that

such exhaustion is not required and that they would serve as proper class representatives

because Astolfo Terrazas allegedly was enrolled as an APS student for the duration of the

alleged policy or custom, *i.e.*, from 1990 through 2002 or thereafter.  [Doc. No. 32, 33.]

A complaint may be amended "once as a matter of course at any time before a

responsive pleading is served."  Fed. R. Civ. P. 15(a).  Thereafter, such an amendment

requires leave of the Court or written consent of the adverse party.  Such "leave shall be

freely given when justice so requires."  Id.  It is within the Court's discretion, however, to

deny leave to amend a pleading under Fed. R. Civ. P. 15(a) based upon a justifying reason

such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure

to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

party by virtue of allowance of the amendment, [and] futility of amendment."  Foman v.

Davis, 371 U.S. 178, 182 (1962); accord Hom v. Squire, 81 F.3d 969, 973 (10th Cir. 1996).

A motion to amend a complaint is futile if, notwithstanding the amendment, the complaint "would be subject to dismissal" for any reason. Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc., 175 F.3d 848, 859 (10th Cir. 1999). Thus, an amendment is futile if the resulting pleading would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), i.e., if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" GFF Corp., 130 F.3d at 1384 (quoting Conley, 355 U.S. at 45-46). An amendment is also futile of it can be determined on the basis of undisputed material facts that the resulting pleading would not survive a motion for summary judgment under Fed. R. Civ. P. 56. See Watson v. Beckel, 242 F.3d 1237, 1239-40 (10th Cir. 1997). Finally, an amendment is futile if the Court would lack jurisdiction to hear it, see Hutchinson v. Pfeil, 211 F.3d 515, 523 (10th Cir. 2000), under the standard of review articulated in Stuart v. Colo. Interstate Gas Co., 271 F.3d 1221, 1225 (10th Cir. 2001).

Applying these standards, I conclude that Plaintiff's ADA, Section 504, and IDEA claims against the individual Defendants in their personal capacities are subject to dismissal as a matter of law because these statutes do not impose liability on individual school employees in their personal capacity for the reasons previously stated. Further, it is unnecessary to name these individual Defendants in their official capacity insofar as the Board of Education remains available as an institutional Defendant. Accordingly, I conclude that it would be futile to permit Plaintiffs to reassert such claims against the individual

-20-

Defendants in their proposed *First Amended Complaint.*  Plaintiffs' motion to amend is denied in part with respect to these claims.

I reach a different conclusion insofar as Plaintiffs' only seek leave to add Angelica Terrazas for her son, Astolfo Terrezas, in this action for purposes of the remaining claims (*i.e.*, the ADA, Section 504, and IDEA claims against Defendant Board of Education and the constitutional claims brought under 42 U.S.C. § 1983 against all Defendants).  While it is possible that Defendants may have valid defenses to the remaining claims asserted by Ms. Terrazas on behalf of her son, merely alluding to the possibility of such defenses in response to Plaintiffs' motion does not provide the Court with a legally sufficient basis to conclude that the proposed *First Amended Complaint* would be futile.  Under the standards articulated above, the pleadings and undisputed facts established at this preliminary juncture do not compel the conclusion that these remaining claims are so deficient that it would be futile to allow them to be added to Plaintiffs' pleading.

Defendants point out that the proposed Terrazas Plaintiffs have not exhausted their administrative remedies pursuant to the IDEA.  In this context, the failure to exhaust such administrative remedies may form the basis for a jurisdictional challenge.  See Cudjoe v. Indep. Sch. Dist. No. 12, 297 F.3d 1058, 1063 (10th Cir. 2002); Padilla, 233 F.3d at 1274; Urban v. Jefferson County Sch. Dist. R-1, 89 F.3d 720, 724 (10th Cir. 1996); Ass'n for Cmty. Living in Colo. v. Romer, 992 F.2d 1040, 1044-45 (10th Cir. 1993).

Such a jurisdictional challenge may take two forms.  Insofar as Defendants mount a facial attack on Plaintiffs' proposed *First Amended Complaint*, the Court accepts the

allegations in that pleading as true and simply determines whether they are legally sufficient to establish subject-matter jurisdiction.  See Stuart, 271 F.3d at 1225.  But if the Defendants rely on facts outside the pleadings to support their jurisdictional challenge, the Court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts."  Holt v. United States, 46 F.3d 1000, 1003 (10th Cir.1995).

Such discretion to engage in jurisdictional factfinding is limited, however, by the following considerations.  First, reliance on evidence outside the pleadings may convert a jurisdictional challenge into a motion for summary judgment subject to the requirements of Fed. R. Civ. P. 56 where "'the jurisdictional question is intertwined with the merits of the case.'"  Sivoza v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002) (quoting Wheeler v. Hurdman, 825 F.2d 257, 259 (10th Cir.1987)).  Second, "'[w]hen a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion.'"  Id. at 1326 (quoting Budde v. Ling-Temco Vought, Inc., 511 F.2d 1033, 1035 (10th Cir.1975)).   A refusal to grant discovery on such issues "constitutes an abuse of discretion if the denial results in prejudice to a litigant."  Id.

The basic question of whether the proposed Terrazas Plaintiffs have in fact exhausted their administrative remedies is not intertwined with the merits of their substantive claims.  See id. at 1324-25.  Resolution of this question does not require discovery because it is undisputed that these Plaintiffs have not exhausted their administrative remedies pursuant to the IDEA.  [Doc. No. 33, at 2.]  Nevertheless, this fact does not necessarily compel the

conclusion that the *First Amended Complaint* would be futile as to the proposed Terrazas

Plaintiffs because they claim to be excused from the exhaustion requirement.

In general, such claims must be evaluated in light of the important purposes that the

exhaustion requirement is designed to serve.  See Hoeft v. Tucson Unified Sch. Dist., 967

F.2d 1298, 1304 (9th Cir. 1992).  These purposes include:

> "(1) permitting the exercise of agency discretion and expertise on issues
> requiring these characteristics;  (2) allowing the full development of technical
> issues and a factual record prior to court review;  (3) preventing deliberate
> disregard and circumvention of agency procedures established by  Congress;
> and (4) avoiding unnecessary judicial decisions by giving the agency the first
> opportunity to correct any error."

Hayes v. Unified Sch. Dist. No. 377, 877 F.2d 809, 814 (10th Cir.1989) (quoting Ass'n for

Retarded Citizens, Inc. v. Teague, 830 F.2d 158, 160 (11th Cir.1987) (citations omitted)).

Where these purposes are not served by requiring exhaustion of administrative remedies, this

requirement may be excused.  See Hoeft, 967 F.2d at 1304.

Courts have recognized such exceptions "when administrative remedies would be

futile, when they would fail to provide relief, or when 'an agency has adopted a policy or

pursued a practice of generally applicability that is contrary to the law'" which "'thereby

renders agency expertise and the factual development of an administrative record less

important.'"   Urban, 89 F.3d at 724 (quoting Romer, 992 F.2d at 1044).  In particular, the

Tenth Circuit has held that exhaustion is not required when the plaintiff does not seek relief

that is available under the IDEA, *i.e.*, when the plaintiff only seeks redress for physical

-23-

injuries and "makes no complaints regarding her current educational situation." Padilla, 233 F.3d at 1274.

The proposed class of Plaintiffs does not fall under the narrow exception recognized in Padilla, 233 F.3d at 1274. The relief they seek clearly relates to educational benefits which they contend APS is obligated to provide.

Nevertheless, Plaintiffs assert that one or more of the other exceptions recognized in Romer, 992 F.2d at 1044, apply here. Under these exceptions, "[a]dministrative remedies are generally futile or inadequate when plaintiffs allege 'structural or systemic failure and seek systemwide reforms.'" Urban, 89 F.3d at 724 (quoting Romer, 992 F.2d at 1044). "The same is true where plaintiffs assert violations of the IDEA's due process provisions." Romer, 992 F.2d at 1044.

The Tenth Circuit declined to apply these exceptions to the facts presented in Romer because "the violations alleged and relief requested" in that case did "not target structural or due process concerns, but rather [concerned] the effect of a single component of CDE's educational program on individual children's IEPs." Id. Merely "framing a complaint as a class action challenge to a general policy does not convert it into one" alleging "the kind of systemic violation that renders the exhaustion requirement inadequate or futile." Id. Further, the fact the Romer plaintiffs were "challenging a policy of general applicability rather than an IEP formulated pursuant to that policy" did not automatically convert their claims into a purely legal question that could be answered without the benefit of agency expertise and a fully developed administrative record. Id. at 1044-45.

-24-

But the <u>Romer</u> Court did "not hold that every plaintiff in a class action must exhaust the IDEA's administrative remedies." <u>Id.</u> at 1045. "Even where exhaustion is necessary, the exhaustion of a few representative claims may be sufficient to secure statutory compliance and, if not, would at least serve the purposes of the exhaustion requirement and properly frame the issues for judicial review." <u>Id.</u> (citing <u>Hoeft</u>, 967 F.2d at 1308, and <u>Teague</u>, 830 F.2d at 161- 62). In this case, it is undisputed that at least one set of Plaintiffs (Barr-Rhoderick and May) have exhausted their administrative remedies. This fact raises the question of whether the exhaustion of administrative remedies as to these Plaintiffs may be sufficient to properly frame the issue for judicial review as to other proposed Plaintiffs.

The Ninth Circuit recently addressed a similar question when it held that a group of students "sufficiently exhausted their administrative remedies because they are challenging a blanket decision to shorten the school day for autistic students, one made outside of the IEP process; because [an] administrative complaint [by a parent of one of the students] put the state on notice of the issue; and because determining whether lunch and recess may be counted as instructional time in this case does not require administrative expertise." <u>Christopher S. v. Stanislaus County Office of Educ.</u>, 384 F.3d 1205, 1213-14 (9th Cir. 2004). In reaching this conclusion, the Ninth Circuit cited the framework articulated in <u>Hoeft</u>, 967 F.2d at 1306-08, which the Tenth Circuit also cited in <u>Romero</u>, 992 F.2d at 1045.

In <u>Hoeft</u>, 967 F.2d at 1306-07, the Ninth Circuit acknowledged that an alleged "informal policy . . . which . . . provides a uniform amount of extended year programming to eligible children regardless of individual need," as well as an allegedly inadequate

"parental notification policy" would, if proven, constitute "a facial violation of the IDEA's individualization requirements" that "involves a purely legal question."  Nevertheless, the Ninth Circuit did not recognize an exception to the exhaustion requirement in Hoeft because "even where local school policies appear on their face to violate the IDEA, administrative exhaustion may be necessary to give the state a reasonable opportunity to investigate and correct such policies."  Id. at 1307.  In that case, such an opportunity was lacking because the plaintiffs proceeded to file suit in the district court before receiving a response to their administrative complaint, and there was evidence that the defendant in fact responded and corrected the policy through administrative channels while the litigation was pending.  See id. at 1308 & n. 8.  The facts of the present case may be distinguishable insofar as Plaintiffs Barr-Rhoderick and May waited until the completion of the administrative review process before filing suit.

I decline to resolve these disputed jurisdictional questions at this juncture for two reasons.  First, unlike the straightforward factual question of whether an individual plaintiff has exhausted administrative remedies, the more complex question of whether the IDEA's exhaustion requirement should be excused for a particular class or subset of Plaintiffs may be intertwined with the merits of these Plaintiffs' substantive claims.  Such intertwining may occur in this context because the applicability of an exception to the IDEA's exhaustion requirement may depend on the type of substantive claim that is presented.  If, for example, Plaintiffs can demonstrate the existence of a policy or custom that constitutes "a facial violation of the IDEA's individualization requirements" and "involves a purely legal

-26-

question," then an exception to the exhaustion requirement may apply so long as Defendants were given some degree of notice and opportunity to correct the problem before the litigation commenced.  Hoeft, 967 F.2d at 1306-07; Christopher S., 384 F.3d at 1213-14.  On the other hand, if such a policy or custom cannot be demonstrated, then the Court may be presented with nothing more than a piecemeal assortment of challenges to "individual children's IEPs," which is unlikely to justify granting an exception to the exhaustion requirement no matter how it is labeled in Plaintiffs' pleadings.  Romer, 992 F.2d at 1044.

The second reason that I decline to resolve the disputed jurisdictional issues at this juncture is that, in the exercise of my discretion, I determine that Plaintiffs should be afforded additional opportunity for discovery as to these issues.  See Sivoza, 282 F.3d at 1326.  While I recognize that the individual Defendants who have raised the defense of qualified immunity may be excused from discovery as to Plaintiffs' constitutional claims under 42 U.S.C. § 1983 pending resolution of their motion for summary judgment, see Workman v. Jordan, 958 F.2d 332, 335-36 (10th Cir. 1992), I believe it would be unfairly prejudicial to Plaintiffs to allow all the Defendants to demand an immediate ruling on the issue of exhaustion of administrative remedies if the Defendants decline to participate in the discovery needed to resolve the jurisdictional facts required for such a ruling.

I also recognize that Defendants claim to be unfairly prejudiced by Plaintiffs' proposed amendment.  According to Defendants, the addition of the proposed Terrazas Plaintiffs at this time is prejudicial because it effectively deprives the defense of the opportunity to develop a factual record regarding the suitability of this set of Plaintiffs as

class representatives, which Defendants would otherwise utilize in briefing the cross-motions regarding class certification that are currently pending.  Defendants also claim prejudice on the grounds that the case of the proposed Terrazas Plaintiffs involves factual and legal issues that are not common to the existing named Plaintiffs and will unnecessarily complicate this litigation.

I do not agree that the prejudice claimed by Defendants provides an adequate basis on which to deny Plaintiffs' motion to amend the *Complaint*.  In considering this issue, I must first consider the adequacy of other, less drastic alternatives to cure the alleged prejudice before resorting to the relief that Defendants request. See generally Ehrenhaus v. Reynolds, 965 F.2d 916, 920-21 (10th Cir. 1992).   Here I find that the alleged prejudice caused by the timing of this amendment can be cured by affording Defendants an opportunity for additional briefing on other pending motions, including the cross-motions regarding class certification and the motion for summary judgment based on qualified immunity, after the filing of Plaintiffs' *First Amended Complaint*.  If it is subsequently determined that this case does not warrant class certification, or that the Terrazas Plaintiffs are misjoined, then there are procedural mechanisms available for severing their claims or dropping them from the litigation at that time.  See Fed. R. Civ. P. 20(b), 21, 42(b).

For all of the above reasons, Plaintiff's motion to amend the *Complaint* is granted in part with respect to the addition of the Terrazas Plaintiffs under the conditions specified above.  Plaintiffs are granted leave to file a *First Amended Complaint* consistent with this *Memorandum Opinion and Order* by no later than February 10, 2005.

Because my analysis does not depend on, or allow for, the new issues or claims raised for the first time in Plaintiffs' reply brief [Doc. No. 42], I find it unnecessary to permit Defendant APS to file a surreply regarding such new issues or claims. See generally  Stump v. Gates, 211 F.3d 527, 533 (10th Cir.2000) (stating reasons why courts generally do not consider issues raised for the first time in a reply brief); FDIC v. Noel, 177 F.3d 911, 915 (10th Cir.1999) (applying this rule to district courts); Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1163-65 (10th Cir. 1998) (noting that district courts have the option to refrain from relying on any new material in a reply brief in lieu of accepting a surreply).  Accordingly, Defendant APS's motion to file a surreply is denied as moot.

In the event that Plaintiffs proceed with the filing of the *First Amended Complaint* by the deadline specified above, the parties may file a motion requesting a proposed schedule for completing any supplemental briefing they wish to present with respect to how this amendment affects the pending cross-motions for class certification and the motion for summary judgment based on qualified immunity.  Such a motion should also address whether and to what extent the proposed briefing schedule implicates other case management deadlines or would affect the scheduled pretrial conference and trial dates.  Defendants are, of course, free to reassert the issue of exhaustion of administrative remedies, as well as other defenses to Plaintiffs' *First Amended Complaint*, in a timely motion or responsive pleading.

### C.    Failure to Effect Service of Process on Defendant Heiman

Finally, the Court must conduct a *sua sponte* inquiry regarding the reasons for Plaintiffs' apparent failure to effect service of process on Defendant Heiman within the 120-

day period specified in Fed. R. Civ. P. 4(m).  The *Complaint* naming this Defendant was filed on March 23, 2004.  [Doc. No. 1.]  The record does not reflect that Plaintiff effected service of process on Defendant Heiman within 120 days thereafter.

Fed. R. Civ. P. 4(m) provides, in relevant part, that:  "If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant."  In addition, "failure of the plaintiff to prosecute or to comply with these rules or any order of court" provides a basis for involuntary dismissal under Fed. R. Civ. P. 41(b).

In light of these findings and the applicable law, the Court directs Plaintiffs to show cause by no later than February 8, 2005, why all claims against Defendant Heiman should not be dismissed without prejudice for failure to effect service of process within the time provided by Fed. R. Civ. P. 4(m), or for failure to prosecute or to comply with these rules or any order of court.

## III.   **CONCLUSION**

For the foregoing reasons, Plaintiffs' ADA, Section 504, and IDEA claims against the individual Defendants are dismissed, and Plaintiffs are precluded from reasserting these claims against the individual Defendants in their personal capacity by means of an amended pleading or under the guise of 42 U.S.C. § 1983.  Plaintiffs' claims against the individual Defendants (Everitt, Hines, Kilpatrick, and Williams) in their official capacity are also dismissed.  The result of these rulings is that the only remaining claims against the individual

Defendants are those brought under 42 U.S.C. § 1983 alleging violations of the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment to the United States Constitution.  All of the claims previously asserted against Defendant Board of Education also remain.  With respect to these remaining claims, Plaintiffs are granted leave until no later than February 10, 2005, to file a *First Amended Complaint* naming Angelica Terrazas for her son, Astolfo Terrazas, as additional Plaintiffs.  Plaintiffs are directed to show cause why their claims against Defendant Heiman should not be dismissed, and the parties are granted leave to file a motion setting forth a proposed briefing schedule with respect to any supplemental information or authority they wish to present concerning the pending cross-motions regarding class certification and motion for summary judgment based on qualified immunity.

**IT IS, THEREFORE, ORDERED** that the ***Individual Defendants' Motion to Dismiss ADA, Section 504, and IDEA Claims*** [Doc. No. 11] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' claims under the IDEA, Section 504 of the Rehabilitation Act, and Title II of the ADA against Defendants Everitt, Hines, Kilpatrick, and Williams in their personal capacities are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs' claims against Defendants Everitt, Hines, Kilpatrick, and Williams in their official capacities are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that *Plaintiff's Motion to Amend Complaint* [Doc. No. 32] is **GRANTED IN PART** with respect to the addition of Angelica Terrazas for her son, Astolfo Terrazas, as named Plaintiffs and **DENIED IN PART** with respect to reasserting any of the dismissed claims against Defendants Everitt, Hines, Kilpatrick, or Williams.

**IT IS FURTHER ORDERED** that Plaintiffs are granted leave to file a *First Amended Complaint* consistent with this *Memorandum Opinion and Order* by no later than February 10, 2005.

**IT IS FURTHER ORDERED** that *Defendant Albuquerque Public Schools' Motion for Leave to File Surreply in Response to Plaintiffs' Reply in Support of Its Motion for Leave to Amend the Complaint* [Doc. No. 51] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiffs are ordered to show cause in writing by no later than February 8, 2005, as to why their claims against Defendant Heiman should not be dismissed without prejudice for failure to effect service of process within the time specified in Fed. R. Civ. P. 4(m) or for failure to prosecute or to comply with these rules or any order of court.

**IT IS FURTHER ORDERED** that if Plaintiffs file a *First Amended Complaint* by the date specified above, then the parties are granted leave to file a motion setting forth a proposed briefing schedule with respect to any supplemental information or authority they

wish to present on the pending cross-motions regarding class certification and motion for summary judgment based on qualified immunity.

     **SO ORDERED** this 28th day of January, 2005, in Albuquerque, New Mexico.

 

_____

**M. CHRISTINA ARMIJO**
**UNITED STATES DISTRICT JUDGE**