# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JANETTE BARR-RHODERICK**,
as legal guardian and next friend of
**CHRISTINA JANETTE MAY**,
a minor, and for similarly situated
minor students,

       Plaintiffs,

     vs.                             No. CIV 04-0327 MCA/ACT

**THE BOARD OF EDUCATION OF
ALBUQUERQUE PUBLIC SCHOOLS**,
**BETH EVERITT**, as Superintendent of Schools,
**DEBI HINES**, as Director of Special Education,
**NANCY KILPATRICK**, **RON WILLIAMS**,
as former Directors of Special Education,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *The Individual Defendants' Motion for Summary Judgment on  Qualified Immunity Grounds* [Doc. No. 21] filed on August 20, 2004, the parties' responses [Doc. No. 76, 77] to the *Order to Show Cause* [Doc. No. 73] filed on March 18, 2005, and *Defendants' Motion to Dismiss or to Strike Plaintiffs' First Amended Complaint* [Doc. No. 65] filed on February 23, 2005.  Having considered the parties' submissions, the relevant law, and being fully advised in the premises, the Court grants Defendants' motion to dismiss or strike and dismisses Plaintiffs' *First Amended*

*Complaint* without prejudice under the conditions set forth below, which include leave to file a second amended complaint by no later than April 15, 2005, that complies with the Court's rulings and does not contain allegations regarding "different" or "altered" school days. The Court also grants in part and denies in part the individual Defendants' motion for summary judgment under the conditions set forth below, which include leave to file another motion reasserting the defense of qualified immunity as to the claims raised in Plaintiffs' amended pleading.

## I.    **BACKGROUND**

The history of this action is set forth in the *Memorandum Opinion and Order* [Doc. No. 58] filed on January 28, 2005. On that date, the Court granted the motion of Defendants Everitt, Hines, Kilpatrick, and Williams (collectively "the individual Defendants") to dismiss all claims against them in their official capacity, as well as the statutory claims asserted against them in their personal capacity under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794a(a)(2); and the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 to 1487.

The Court's *Memorandum Opinion and Order* [Doc. No. 58] also directed Plaintiffs to show cause why their claims against Defendant Heiman should not be dismissed without prejudice for failure to effect service of process within the 120-day time period specified in Fed. R. Civ. P. 4(m). Plaintiffs acknowledged that they could not show cause as to this issue

[Doc. No. 60], and their claims against Defendant Heiman were dismissed without prejudice on February 11, 2005.  [Doc. No. 62.]

In the *Memorandum Opinion and Order* [Doc. No. 58] filed on January 28, 2005, the Court granted Plaintiffs' motion to amend their complaint in part so as to allow the addition of Angelica Terrazas for her son, Astolfo Terrazas, as a named Plaintiff.  The Court denied that motion in part insofar as the proposed *First Amended Complaint* seeks to reassert any official-capacity claims or personal-capacity claims under the ADA, Section 504, or the IDEA against the individual Defendants.  The Court also did not allow the addition of any new issues or claims raised for the first time in Plaintiffs' reply brief [Doc. No. 42].  The Court stated that the parties would be afforded the opportunity to present supplemental briefing on the other motions which remained pending insofar as these motions are affected by the amendment of Plaintiffs' pleading.

As a result of these rulings, the only remaining claims against the individual Defendants are the constitutional claims for violation of due process and equal protection asserted against them in their personal capacity under 42 U.S.C. § 1983.  These claims are the subject of the individual Defendants' motion for summary judgment based on qualified immunity.  [Doc. No. 21.]  The Court scheduled a status conference for March 15, 2005, to discuss the status of this motion [Doc. No. 68], but the status conference was vacated on that date due to inclement weather.  On March 18, 2005, the Court issued an *Order to Show Cause* [Doc. No. 73] why the individual Defendants' summary-judgment motion should not

be denied without prejudice but with leave to refile the motion after the Court determines the proper scope of Plaintiffs' amended pleading.

The scope of Plaintiffs' amended pleading is at issue because on February 10, 2005, Plaintiffs filed a *First Amended Complaint* [Doc. No. 61] containing new language that differs from the proposed pleading [Ex. A to Doc. No. 32] attached to their *Motion to Amend Complaint* [Doc. No. 32]. This new language was not contemplated in the Court's *Memorandum Opinion and Order* [Doc. No. 58], and Defendants filed a *Motion to Dismiss or Strike Plaintiffs' First Amended Complaint* [Doc. No. 65] on February 23, 2005. Briefing on this motion was completed on March 16, 2005. [Doc. No. 72.]

## II.    ANALYSIS

### A.    The Individual Defendants' Motion for Summary Judgment

The Court recognizes that "qualified immunity is not only a defense to liability but also entitlement to immunity from suit and other demands of litigation." Workman v. Jordan, 958 F.2d 332, 336 (10th Cir. 1992) (citing Siegert v. Gilley, 500 U.S. 226 (1991)). Qualified immunity presents a purely legal question of whether the law that Plaintiffs allege the individual Defendants to have violated is clearly established. See id. For these reasons, dispositive motions raising the defense of qualified immunity should be addressed early in the litigation and may not be postponed until trial. See id. Further, a party asserting qualified immunity generally should not be subjected to discovery or trial unless and until the Court rules that this defense does not apply. See id.

In this case, the individual Defendants filed a motion for summary judgment based on qualified immunity early in the litigation [Doc. No. 21], and this motion was directed at the allegations in the original *Complaint*, which arise from the claims of Plaintiffs Barr-Rhoderick and May.  After the individual Defendants filed their summary-judgment motion, Plaintiffs moved to amend their complaint to add the Terrazas Plaintiffs, and the Court permitted this amendment.  [Doc. No. 32, 58.]  Plaintiffs subsequently filed their *First Amended Complaint* [Doc. No. 61], which contains additional claims that are the subject of a motion to strike or dismiss filed by Defendants [Doc. No. 65].

Because the amendment of Plaintiffs' *Complaint* did not occur until after the completion of briefing on the individual Defendants' summary-judgment motion, the Court cannot make an informed ruling at this time as to whether the defense of qualified immunity applies to any of the additional claims raised by this amendment.  The individual Defendants' response [Doc. No. 76] to the *Order to Show Cause* [Doc. No. 73] acknowledges this point and only requests a ruling on the specific claims of Plaintiffs Barr-Rhoderick and May that were first asserted in Plaintiffs' original pleading.  The individual Defendants further acknowledge that an additional motion raising the defense of qualified immunity with respect to Plaintiffs' other claims would be necessary once the Court determines the proper scope of Plaintiffs' amended pleading.  [Doc. No. 76.]

For these reasons, the Court denies the individual Defendants' motion for summary judgment in part as to all claims in Plaintiffs' amended pleading except those which were first asserted in their original pleading and which only pertain to Plaintiffs Barr-Rhoderick

and May.  This denial is without prejudice, and thus the individual Defendants are free to raise the defense of qualified immunity in another motion addressing Plaintiffs' amended pleading.  Cf. FDIC v. Massingill, 24 F.3d 768, 774 (5th Cir. 1994) (acknowledging that district courts retain the authority to revise or clarify their opinions granting or denying partial summary judgment prior to the issuance of a final judgment); 11 James Wm. Moore et al., Moore's Federal Practice § 56.40[2], at 56-281 (3d ed. 2003) (similar).

While the Court defers ruling on the general issue of whether it is possible for any member of the proposed class of APS students to state a claim for deprivation of a constitutional right to equal protection or procedural due process, the Court grants the individual Defendants' motion for summary judgment in part as to the specific claims of Plaintiffs Barr-Rhoderick and May that were first asserted in the original *Complaint.*  As to these specific claims, the evidence of record does not support a reasonable inference that any of the remaining individual Defendants had the type of individual involvement necessary to support a claim against them in their personal capacities under 42 U.S.C. § 1983.

42 U.S.C. § 1983 provides, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Persons sued in their individual capacity under this civil-rights statute generally are entitled to qualified immunity unless it is shown that their actions violated a

specific federal statutory or constitutional right and that the rights which they allegedly violated were clearly established at the time of the conduct at issue.  See Oliver v. Woods, 209 F.3d 1179, 1185 (10th Cir. 2000).

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  Medina v. City & County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992).  But "officials can still be on notice that their conduct violates established law even in novel factual circumstances."  Hope v. Pelzer, 536 U.S. 730, 741, 745 (2002); accord Holland v. Harrington, 268 F.3d 1179, 1197 (10th Cir. 2001).  The "salient question" is whether the state of the law at the time of the incident gave the defendants "fair warning" that their conduct was unconstitutional.  Hope, 536 U.S. at 741.

When an individual defendant raises the affirmative defense of qualified immunity in a summary-judgment motion, the burden shifts to the plaintiff to establish that the defendant's actions violated a constitutional or statutory right and that the right at issue was clearly established at the time of the defendant's unlawful conduct.  See Gross v. Pirtle, 245 F.3d 1151, 1155-56 (10th Cir. 2001).  If the plaintiff fails to meet this burden, then the Court must grant the defendant qualified immunity.  See id. at 1156.  If the plaintiff does establish the violation of a clearly-established constitutional or statutory right, then (for purposes of the defendant's summary-judgment motion) the burden shifts to the defendant to prove that

there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.  See id.

In this case, the parties do not dispute that Plaintiff May first enrolled in APS in November 2002, and that she was initially placed in the Intensive Support Program (ISP) at Taft Middle School pursuant to an Individualized Education Program (IEP) dated November 18, 2002.  The disputed facts primarily concern Plaintiff May's first six school days at Taft Middle School, during which time she allegedly was deprived of a total of three and one-half hours of instructional time as a result of a reduced or shortened school day that was not based on her IEP.

In order to establish that an individual Defendant is liable in his or her personal capacity under 42 U.S.C. § 1983, Plaintiffs must present admissible evidence from which a rational factfinder could conclude that the individual Defendant "personally participated in" this alleged deprivation by means of "'a deliberate, intentional act.'"  Jenkins v. Wood, 81 F.3d 988, 994-95 (10th Cir. 1996) (quoting Woodward v. City of Worland, 977 F.2d 1392, 1399 (10th Cir. 1992)).  "Supervisor status by itself is insufficient to support liability" under this statute.  Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996) (citing Rizzo v. Goode, 423 U.S. 362 (1976)).

To establish supervisory liability under 42 U.S.C. § 1983, a plaintiff must "show that an affirmative link exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise."  Green v. Branson, 108 F.3d 1296, 1302 (10th Cir.1997) (internal quotation marks omitted).

Further, it is not enough to show that a supervisor "should have known" that the alleged deprivation was occurring and failed to stop it, <u>Woodward</u>, 977 F.2d at 1399, because "[l]iability of a supervisor under § 1983 must be predicated on the supervisor's deliberate indifference, rather than mere negligence," <u>Green</u>, 108 F.3d at 1302.

The evidence of record in this case does not show any personal involvement by the individual Defendants in the first six school days of Plaintiff May's enrollment at APS's Taft Middle School in November 2002, or in any subsequent failure to remedy her alleged deprivation of three and one-half hours of instructional time.  According to Plaintiffs' allegations, Defendants Williams' and Kilpatrick's only connection with this alleged deprivation is that they each occupied the position of Director of Special Education for APS two to three years earlier in 1999 and 2000.  While Plaintiffs allege that the deprivation of Plaintiff May's instructional time in November 2002 resulted from a policy or custom regarding shortened school days which originated some years earlier, they cite no evidence in the record that affirmatively links Defendants Williams or Kilpatrick to the creation or continuation of that policy or custom.  Plaintiffs also cite no evidence which could support a reasonable inference that these two individual Defendants acted with deliberate indifference and knowingly created a substantial risk that Plaintiff May would be deprived of instructional time or subjected to six shortened school days two to three years after the end of their tenure as APS's Director of Special Education.

Similarly, the evidence of record does not support a reasonable inference that Defendants Hines or Everitt personally participated in the alleged deprivation of Plaintiff

May's instructional time or shortened school days, or that these two Defendants acted with deliberate indifference in creating or continuing a policy or custom that allegedly resulted in this deprivation.  To support such an inference, Plaintiffs rely primarily on the fact that Defendants Hines and Everitt were employed by APS in supervisory positions on or about the time of Plaintiff May's alleged deprivation.  The only specific evidence linking these Defendants to the alleged policy or custom of providing a shortened school day is the memorandum from Defendant Hines dated November 8, 2002, on which Defendant Everitt is listed as a copyee.  [Ex. G to Doc. No. 22.]  This memorandum, however, is directed at putting a stop to such policies or customs and does not support a reasonable inference of deliberate indifference on the part of Defendants Hines or Everitt.  In addition, Defendant Hines' memorandum predates both Plaintiff May's enrollment in APS and the State Department of Education's memoranda attached to Plaintiffs' response brief [Ex. 10, 11].  Under these circumstances, the evidence of record does not support a reasonable inference that Defendants Hines or Everitt deliberately contravened the guidance provided in the latter memoranda or intentionally misapplied that guidance with respect to Plaintiff May.

For these reasons, the individual Defendants are entitled to summary judgment with respect to the specific claims of Plaintiffs Barr-Rhoderick and May that were first asserted in the original *Complaint*.  Because Plaintiffs have not shown any personal involvement or deliberate indifference by the individual Defendants with respect to these claims, and there is no clearly established law creating liability for the type of violations alleged here based solely on a governmental employee's current or former status as a school superintendent or

director of special education, the individual Defendants are entitled to qualified immunity. The Court's ruling as to the qualified immunity of the individual Defendants does not, however, affect Plaintiffs' claims under 42 U.S.C. § 1983 against Defendant APS, which arise under a different theory of liability and are not subject to the defense of qualified immunity.   See generally Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998) (distinguishing municipal liability from liability of individual employees).   In addition, the Court defers ruling on the issue of qualified immunity as it pertains to the other claims against the individual Defendants that are asserted in Plaintiffs' amended pleading.   The individual Defendants' summary-judgment motion is denied in part without prejudice insofar as it is construed as raising qualified-immunity issues regarding these additional claims.

### B.   Defendants' Motion to Dismiss or Strike the First Amended Complaint

The standard under which a district court reviews a party's amendment of its pleading depends in part on the timing and the scope of the proposed amendment.   Generally, such amendments require leave of the Court if they occur after the filing of a responsive pleading and do not have the written consent of the adverse party.   See Fed. R. Civ. P. 15(a).   The Court previously applied the standard articulated in Fed. R. Civ. P. 15(a) when granting in part the Plaintiffs' *Motion to Amend Complaint* [Doc. No. 32].   Under this standard, leave to amend a pleading "shall be freely given when justice so requires."   Id.; see Foman v. Davis, 371 U.S. 178, 182 (1962); accord Hom v. Squire, 81 F.3d 969, 973 (10th Cir. 1996). [Doc. No. 58.]

-11-

A different standard applies, however, insofar as Plaintiffs' *First Amended Complaint* [Doc. No. 61] adds new language that is outside the scope of what the Court permitted in its ruling on Plaintiffs' motion to amend.  To the extent Plaintiffs' *First Amended Complaint* falls outside these parameters, the amendment of their pleading occurred after the deadlines contained in the Court's scheduling orders, and is therefore governed by the standard articulated in Fed. R. Civ. P. 16(b) and D.N.M. LR-Civ. P. 16.1.  See Rowen v. State of N.M., 210 F.R.D. 250, 252 (D.N.M. 2002) (collecting cases).

In order to determine which of the above standards applies to Plaintiffs' *First Amended Complaint*, I first compare the language contained in this filing to Plaintiffs' previous iterations of their pleading.  I initially note that the *First Amended Complaint* filed on February 10, 2005, adds the Terrazas Plaintiffs but deletes Plaintiffs' statutory claims and official capacity claims against the individual Defendants.  [Doc. No. 61.]  These changes are not the source of the current controversy, however, because I previously granted Plaintiffs' motion in part with respect to the addition of the Terrazas Plaintiffs [Doc. No. 58], and Defendants do not take issue with the minor differences between the *First Amended Complaint* [Doc. No. 61] and the proposed pleading attached to Plaintiffs' motion to amend [Ex. A to Doc. No. 32] that result from the deletion of certain claims against the individual Defendants.  Defendants do, however, object to the *First Amended Complaint* [Doc. No. 61] insofar as it adds new language not previously contained in the proposed pleading attached to Plaintiffs' motion to amend [Ex. A to Doc. No. 32] and not attributable to the deletion of the statutory claims and official capacity claims against the individual Defendants.

In particular, Defendants point out that both Plaintiffs' original pleading and the proposed pleading attached to Plaintiffs' motion to amend direct their allegations to a proposed class of APS students whose hours of school attendance were "reduced" or "shortened," or who were not provided with a "full school day." [Doc. No. 1; Ex. A to Doc. No. 32, at ¶¶ 1, 9, 28, and Page 12.] The *First Amended Complaint* that Plaintiffs actually filed on February 10, 2005, expands this class to include APS students whose hours of school attendance were "altered" or who were provided with a "different" school-day schedule than other students. [Doc. No. 61, at ¶¶ 1, 10, 28, 29, and Page 13.]

The *First Amended Complaint* filed on February 10, 2005, also expands the scope of Plaintiffs' claims to cover a new category of alleged violations concerning "altered" school days that occurred after November 2002. [Doc. No. 61, at ¶¶ 28, 29.] Neither Plaintiffs' original pleading nor the proposed pleading attached to their motion to amend contain any reference to this new category of alleged violations occurring after November 2002. [Doc. No. 1; Ex. A to Doc. No. 32, at ¶ 28.]

Plaintiffs contend that the new language in the *First Amended Complaint* does not change the nature of their claims but merely expands on those previously raised in their original pleading. Plaintiffs further contend that their original *Complaint* should be liberally construed to include the additional claims raised by the new language in the *First Amended Complaint*, and that under such a liberal construction, Plaintiffs had tacit or implied approval to add the new language to their pleading. These contentions are without merit.

In stating their claim and making a demand for judgment, Plaintiffs' original pleading employs the general terminology of a "shortened" or "reduced" school day. I do not dispute that Plaintiffs' use of these general terms to describe what they are challenging is sufficient to provide Defendants with fair notice of a claim under the minimal requirements of notice pleading contained in Fed. R. Civ. P. 8. See generally Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). Plaintiffs are not required to plead evidence or meet an evidentiary burden in their *Complaint*. See id.

Thus, while Plaintiffs' original *Complaint* gives specific examples of alleged practices or proferred explanations that fall under their general challenge to a "shortened" or "reduced" school day (such as the use of planning periods, bus schedules, or lunch periods as a pretext for reducing instructional time) [Doc. No. 1], these specific evidentiary allegations do not change the general nature of Plaintiffs' claim, nor do they foreclose Plaintiffs from presenting additional evidence concerning other specific practices or proferred explanations which fall under the general description of a "shortened" or "reduced" school day. Indeed, the language in Plaintiffs' original pleading that refers to certain "covert" conduct or "vestiges" of an earlier policy or custom is reasonably construed as alleging, upon information and belief, that there is additional and more specific evidence to support their general challenge to a "shortened" or "reduced" school day.

The language in Plaintiffs' original pleading does not, however, give fair notice to Defendants of new or expanded claims based on allegations of a "different" or "altered" school day. The terms "different" and "altered" are not synonymous with the terms

"reduced" or "shortened," nor do the former terms serve to qualify, illustrate, or provide specific examples in support of a more general claim falling under the latter terms. On the contrary, the terms "different" and "altered" raise Plaintiffs' claims to an even higher level of generality, as the words "shortened" or "reduced" describe just one of several ways in which Plaintiffs' school days allegedly were "different" or "altered."

While the rules of notice pleading require that Plaintiffs' original *Complaint* be construed liberally to include evidence of the specific practices or proferred explanations that fall under the general claim of a "reduced" or "shortened" school day, the same rules also require the new language in Plaintiffs' *First Amended Complaint* to be liberally construed as well. A liberal construction of this new language raises Plaintiffs' claim to a higher level of generality that encompasses all programmatic differences or alterations in the school day, not just those involving reduced hours of instruction or a shortened day.

Such changes to Plaintiffs' pleading are not mere surplusage. Rather, they are the type of expansive and substantive changes to a pleading that require Court approval and must abide by the deadlines contained in the Court's scheduling orders. Plaintiffs did not obtain prior Court approval to add this new language to their *First Amended Complaint*. More importantly, they did not seek leave to amend their pleading with this new language by the deadline specified in the Court's prior scheduling orders.

In conjunction with the Rule 16 scheduling conference and the *Initial Pretrial Report* entered in this case, United States Magistrate Judge Alan C. Torgerson issued an *Order* setting a deadline of October 12, 2004, for Plaintiffs to add parties or amend their pleadings.

[Doc. No. 19.]  On that date, Plaintiffs filed a motion to extend the deadline for adding parties and amending their pleading.  Plaintiffs' motion and supporting memorandum acknowledge that Court approval is required to extend the deadline and that by doing so, the Court would not be granting Plaintiffs "*carte blanche*" to amend their pleading, nor would Defendants be precluded from objecting to any proposed amendment.  [Doc. No. 27, 28.] With these assurances, Judge Torgerson granted an extension until November 12, 2004, for Plaintiffs to file their motion to amend.  [Doc. No. 30.]

Plaintiffs filed their motion to amend on that date.  [Doc. No. 32.]  As noted above, the proposed pleading attached to that motion did not contain the new language regarding an "altered" or "different" school day that was later added to the *First Amended Complaint*. While Plaintiffs alluded to some of this new language in other motion papers filed after the November 12, 2004, deadline had passed for amending their pleadings [Doc. No. 39, 42] none of this language was referenced in the motion to amend that Plaintiffs filed on that date. [Doc. No. 32.]  Defendants timely objected to such allusions in Plaintiffs' other motion papers.  [Doc. No. 49, 51.]  The Court previously ruled on these objections when it denied Defendants' motion to file a surreply as moot on the grounds the new issues or claims raised for the first time in Plaintiffs' reply brief [Doc. No. 42] would not be allowed.  [Doc. No. 58, at 29.]  At that time, the Court cited the general rule that courts do not consider issues raised for the first time in a reply brief, see Stump v. Gates, 211 F.3d 527, 533 (10th Cir.2000); FDIC v. Noel, 177 F.3d 911, 915 (10th Cir.1999), and noted that district courts have the

option to refrain from relying on any new material in a reply brief in lieu of accepting a surreply, see Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1163-65 (10th Cir. 1998).

The Court now finds that the new allegations in Plaintiffs' *First Amended Complaint* [Doc. No. 61] filed on February 10, 2005, must be dismissed without prejudice on the following additional grounds.  First, Plaintiffs never sought leave to add this language to their pleading as required by Fed. R. Civ. P. 15(a).  Rather, they simply made this addition to their *First Amended Complaint* without first filing a timely motion seeking leave to do so.

Moreover, because this amendment did not occur until after the deadline imposed by the Court's scheduling order [Doc. No. 30], it is governed by the more stringent "good cause" standard in Fed. R. Civ. P. 16(b) and D.N.M. LR-Civ. 16.1.  See Rowen, 210 F.R.D. at 252 (D.N.M. 2002) (collecting cases).  Fed. R. Civ. P. 16(b) authorizes district courts to issue scheduling orders that limit "the time . . . to join other parties and to amend the pleadings."  In the District of New Mexico, such orders may take the form of an *Initial Pretrial Report* [Doc. No. 20] filed pursuant to D.N.M. LR-Civ. 16.1.  Under these rules, modification of the deadlines contained in the *Initial Pretrial Report* or in other scheduling orders requires a showing of good cause and Court approval.  See Fed. R. Civ. P. 16(b); D.N.M. LR-Civ. 16.1; Rowen, 210 F.R.D. at 252.

"'The primary measure of Rule 16's "good cause" standard is the moving party's diligence in attempting to meet the case management order's requirements.'"  Rowen, 210 F.R.D. at 252 (quoting Bradford v. Dana Corp., 249 F.3d 807, 809 (8th Cir. 2001)).  Under this standard, "the Court may grant leave to modify the pretrial schedule and amend the

complaint under Rule 16(b) only if the schedule 'cannot reasonably be met despite the diligence of the party seeking the extension.'"   Id. (quoting Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir.1992)).  Prejudice to the adverse party is also a factor to be considered.  See Leary v. Daeschner, 349 F.3d 888, 907-08 (6th Cir. 2003). With respect to the new language added to the *First Amended Complaint*, I find that Plaintiffs do not meet the standard of Fed. R. Civ. P. 16(b) and D.N.M. LR-Civ. 16.1 because, as explained in further detail below, they did not show diligence in trying to meet the existing deadline for amendment of their pleading, and Defendants are unduly prejudiced by the timing of this amendment.

In this regard, the Tenth Circuit has recognized that:

"A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim.   Liberality in amendment is important to assure a party a fair opportunity to present his claims and defenses, but 'equal attention should be given to the proposition that there must be an end finally to a particular litigation.'   [Citation omitted.]   ... Much of the value of summary judgment procedure in the cases for which it is  appropriate ... would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory prove unsound, come back along thereafter and fight on the basis of some other theory."

Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1027 (10th Cir. 1994) (quoting Freeman v. Continental Gin Co., 381 F.2d 459, 469-70 (5th Cir.1967)).  These principles are especially pertinent in this case given the sequence and the timing of Defendants' dispositive motions and the cross-motions for class-certification under the Court's scheduling orders.

Additionally, I find that by filing a *First Amended Complaint* that contains expansive new language for which they had not timely sought and obtained Court approval, Plaintiffs

violated Fed. R. Civ. P. 15(a), the deadline in the Court's prior scheduling order [Doc. No.

30], and the terms of the *Memorandum Opinion and Order* [Doc. No. 58] filed on January

28, 2005.  Such violations provide grounds for the imposition of sanctions under Fed. R. Civ.

P. 16(f) and 41(b).

Fed. R. Civ. P. 41(b) provides for involuntary dismissal "[f]or failure of the plaintiff

to prosecute or to comply with these rules or any order of court."  More specifically, Fed.

R. Civ. P. 16(f) and 37(b)(2)(C) provide that the Court may impose sanctions on such terms

as are just, including "striking out pleadings" or "dismissing the action," if a party "fails to

obey a scheduling or pretrial order."  "A court also has an 'inherent power' to 'levy sanctions

in response to abusive litigation practices.'"  Jones v. Thompson, 996 F.2d 261, 264-66 (10th

Cir. 1993) (quoting  Roadway Express, Inc. v. Piper, 447 U.S. 752, 765 (1980)).

With respect to involuntary dismissals under the above authorities, the Tenth Circuit

has stated that:

> Before choosing dismissal as a just sanction, a court should ordinarily consider
> a number of factors, including (1) the degree of actual prejudice to the
> defendant; (2) the amount of interference with the judicial process; . . . (3) the
> culpability of the litigant; (4) whether the court warned the party in advance
> that dismissal of the action would be a likely sanction for noncompliance; and
> (5) the efficacy of lesser sanctions.

Ehrenhaus v. Reynolds, 965 F.2d 916, 921 (10th Cir. 1992) (citations and internal quotation

marks omitted); accord Gripe v. City of Enid, 312 F.3d 1184, 1188 (10th Cir. 2002); Jones,

996 F.2d at 264.  In this case, I find that these factors weigh in favor of dismissing Plaintiffs'

*First Amended Complaint* without prejudice and granting Plaintiffs leave to file a second

amended complaint by no later than April 15, 2005, that complies with the Court's rulings and does not include the new language regarding "different" or "altered" school dates.

I further find that Plaintiffs' surreptitious addition of this new language to the *First Amended Complaint* is a cause of actual prejudice to Defendants and interference with the judicial process. By adding the new language in question to their pleading without first moving for and obtaining leave to do so, Plaintiffs deprived Defendants of a fair and timely opportunity to respond and object to this new language. This lost opportunity is significant because the new language regarding an "altered" or "different" school day potentially affects other issues which were previously briefed in this matter, such as the issue of exhaustion of administrative remedies, qualified immunity, and class certification.

As the Court previously noted in the *Memorandum Opinion and Order* [Doc. No. 58] filed on January 28, 2005, it is possible to avoid some of the potential prejudice occasioned by the amendment of Plaintiffs' *Complaint* by granting Defendants an extension of time and an opportunity for supplemental briefing on other pending motions. The curative effect of such extensions and supplements is not limitless, however, because the Court cannot postpone the litigation indefinitely until Plaintiffs determine that they are satisfied with the state of their pleadings. See Pallotino, 31 F.3d at 1027. The need for a prompt disposition of the individual Defendants' assertion of qualified immunity further underscores the importance of adhering to existing deadlines for amendment of pleadings. See Workman, 958 F.2d at 336.

Further, the Court's earlier *Memorandum Opinion and Order* was directed solely at curing the potential prejudice occasioned by the addition of the Terrazas' Plaintiffs and specifically disallowed other amendments for which Plaintiffs failed to seek leave in a timely motion. As such, the Court's earlier ruling cannot reasonably be construed as minimizing the prejudice occasioned by the addition of the new language in Plaintiffs' *First Amended Complaint*, much less authorizing Plaintiffs to disregard the plain language of the Court's prior scheduling orders.

The addition of the new language in the *First Amended Complaint* also has caused interference with the judicial process. In particular, the addition of this new language upsets the procedure for expediting the disposition of the other pending motions that was set forth in the Court's earlier *Memorandum Opinion and Order*. The Court cannot make an informed and fair decision regarding other pending motions, or the individual Defendants' assertion of qualified immunity regarding the new claims in Plaintiffs' amended pleading, until the proper scope of that amended pleading is first defined. The Court attempted to define the proper scope of Plaintiffs' amended pleading in its earlier *Memorandum Opinion and Order*, but Plaintiffs thwarted that attempt by filing additional amendments to their pleading without Court approval, thereby creating the need for another round of briefing and further definition by the Court.

I further find that Plaintiffs' counsel bear some culpability for this delay and interference. In this regard, I note that Plaintiffs previously moved for and obtained an extension of time until November 12, 2004, to file motions to amend their pleading. At that

time, they represented to the Court that they understood the extension of this deadline did not give them "*carte blanche*" to file amendments without Court approval or without providing Defendants a fair opportunity to object. In light of these earlier representations, Plaintiffs' counsel cannot now claim that their decision to file an amendment in violation of the applicable deadline and without Court approval was caused by ignorance or mistake. Rather,  the actions of Plaintiffs' counsel constituted a knowing violation of the orders and rules of the Court.

In light of the Court's earlier specific rulings regarding both the deadline for filing motions to amend pleadings [Doc. No. 30] and the permissible scope of such amendments [Doc. No. 58], Plaintiffs also cannot now claim that they were deprived of fair warning as to these issues.  Plaintiffs are warned that any further violation of the rules or orders of the Court may constitute grounds for imposing additional and more severe sanctions.

I conclude that the most effective sanction at this juncture is to dismiss Plaintiffs' *First Amended Complaint* without prejudice and grant Plaintiffs leave to file a second amended complaint by no later than April 15, 2005, that complies with the Court's rulings and does not contain the new language regarding "different" or "altered" school days.  In reaching this conclusion, I have also considered other possible sanctions, such as requiring Plaintiffs to pay Defendants' attorney fees regarding the motion to strike or dismiss, as well as attorney fees incurred in preparing other pending motions which would have to be re-briefed as a result of the expansive new language in the *First Amended Complaint*.  Due to the nature of the litigation at issue here, such a monetary award would not be a "lesser

sanction" because there is no basis in the record to conclude that Plaintiffs have the ability to pay such an award. Cf. Hornbuckle v. Arco Oil & Gas Co., 732 F.2d 1233, 1237 (5th Cir. 1984) (noting that monetary award was not necessarily a lesser sanction than dismissal when record did not show that plaintiff could pay the monetary sanction in order to avoid dismissal), appeal after remand, 770 F.2d 1321 (5th Cir. 1985).  I also consider a dismissal without prejudice to be a more appropriate sanction because it would not necessarily constitute a decision on the merits of the "different" or "altered" school-day claims which I am not permitting Plaintiffs to add to their pleadings in this case. See generally Styskal v. Weld County Bd. of County Comm'rs, 365 F.3d 855, 858-59 (10th Cir. 2004) (discussing the meaning of "dismissal without prejudice").  Accordingly, I grant Defendants' motion to strike or dismiss and conclude that the appropriate remedy is to dismiss Plaintiffs' *First Amended Complaint* without prejudice and grant Plaintiffs leave to file a second amended complaint by no later than April 15, 2005, that complies with the Court's rulings and does not contain allegations regarding "different" or "altered" school days.

## II.   **CONCLUSION**

For the foregoing reasons, the Court grants the individual Defendants' motion for summary judgment in part with respect to the specific claims of Plaintiffs Barr-Rhoderick and May that were first asserted in the original *Complaint*, and the Court denies the individual Defendants' motion in part without prejudice as to the other claims asserted in Plaintiffs' amended pleading.  In addition, the Court grants Defendants' motion to dismiss or strike and concludes that the appropriate remedy is to dismiss Plaintiffs' *First Amended*

*Complaint* without prejudice and grant Plaintiffs leave to file a second amended complaint by no later than April 15, 2005, that complies with the Court's rulings and does not contain allegations regarding "different" or "altered" school days.

**IT IS THEREFORE ORDERED** that *The Individual Defendants' Motion for Summary Judgment on  Qualified Immunity Grounds* [Doc. No. 21] is **GRANTED IN PART** and **DENIED IN PART** under the conditions specified above.

**IT IS FURTHER ORDERED** that *Defendants' Motion to Dismiss or to Strike Plaintiffs' First Amended Complaint* [Doc. No. 65] is **GRANTED**, and Plaintiffs' *First Amended Complaint* [Doc. No. 61] is **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs are granted leave to file a second amended complaint by no later than April 15, 2005, that complies with the Court's rulings and does not contain allegations regarding "different" or "altered" school days.

**SO ORDERED** this 31st day of March, 2005, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
**UNITED STATES DISTRICT JUDGE**