## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JANETTE BARR-RHODERICK**,
as legal guardian and next friend of
Christina Janette May, a minor,
**ANGELICA TERRAZAS**, as parent
and next friend of Astolfo Terrazas,
a dependent person, and
for similarly situated students,

      Plaintiffs,

vs.                                                No. CIV 04-0327 MCA/ACT

**THE BOARD OF EDUCATION OF**
**ALBUQUERQUE PUBLIC SCHOOLS**,
**BETH EVERITT**, as Superintendent of Schools,
**DEBI HINES**, as Director of Special Education,
**NANCY KILPATRICK**, **RON WILLIAMS**,
as former Directors of Special Education,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the following motions: (1) *Defendants'*
*Motion for Partial Summary Judgment on Lack of Standing Grounds* [Doc. No. 92] filed on
June 10, 2005; (2) *Defendants' Motion for Summary Judgment on Plaintiff Terrazas' Claims*
*for Failure to Exhaust Administrative Remedies* [Doc. No. 87] filed on May 26, 2005; (3)
*Defendant APS' Motion to Strike Exhibits* [Doc. No. 43] filed on  December 22, 2004; (4)
Plaintiffs' *Motion for Class Certification* [Doc. No. 39] filed on December 14, 2004; (5)
*Defendant Albuquerque Public Schools' Motion to Deny Class Certification* [Doc. No. 37]

filed on December 14, 2004; and the Court's *sua sponte* inquiry regarding scheduling matters. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants in part and denies in part *Defendants' Motion for Summary Judgment on Plaintiff Terrazas' Claims for Failure to Exhaust Administrative Remedies* [Doc. No. 87], and denies *Defendants' Motion for Partial Summary Judgment on Lack of Standing Grounds* [Doc. No. 92] for the reasons set forth below. In light of these rulings and the Court's prior orders in this case [Doc. No. 58, 78, 91], the Court determines the neither of the parties' motions regarding the issue of class-certification [Doc. No. 37, 39] provide sufficient grounds for an informed ruling, and therefore the motions regarding class certification and the striking of exhibits are each denied without prejudice under the conditions set forth below, which provide the parties with specific instructions for further briefing on this issue. Finally, in light of the new pretrial deadlines established by the United States Magistrate Judge's *Discovery Order* [Doc. No. 91], the pretrial conference is rescheduled for March 7, 2006, and the trial is reset for April 11, 2006.

I. **BACKGROUND**

The history of this litigation is set forth in the *Memorandum Opinion and Order* [Doc. No. 58] filed on January 28, 2005, and the *Memorandum Opinion and Order* [Doc. No. 78] filed on March 31, 2005. Since those rulings were issued, Plaintiffs have filed a *Class Action Second Amended Complaint* [Doc. No. 79], and Defendants have filed motions for partial summary judgment with respect to Plaintiffs' claims for injunctive relief and the claims of the Terrazas Plaintiffs which are newly asserted in Plaintiffs' amended pleading.

In addition, United States Magistrate Judge Alan C. Torgerson has issued a *Discovery Order* [Doc. No. 91] expanding the scope of discovery and vacating the pretrial conference and trial dates.

According to the *Second Amended Complaint*, Plaintiff Astolfo Terrazas enrolled as an APS student in 1990 and is adversely affected by Defendants' alleged policy or custom of reducing hours of school attendance for certain categories of students with disabilities. The parties agree that the Terrazas Plaintiffs have not exhausted their administrative remedies under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 to 1487,[1] and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

Based on this undisputed fact, Defendants have moved for summary judgment against the Terrazas Plaintiffs. With their motion papers, Defendants have submitted documentation concerning Plaintiff Astolfo Terrazas' Individualized Education Plans (IEPs) that were prepared pursuant to the requirements of the IDEA. See 20 U.S.C. § 1414(d) (describing contents of IEP). Defendants contend that the determination of whether this Plaintiff's school day was shortened or reduced, and whether it was appropriate to do so, depends on a fact-specific inquiry concerning the decision-making of the IEP team reflected in these IEPs. Defendants further contend that it would be improper for this Court to engage in such

---

[1]The IDEA was amended in 2004, and these amendments became effective on July 1, 2005. See Pub. L. No. 108-446, 118 Stat. 2715 (2004). However, all references to the IDEA in this *Memorandum Opinion and Order* concern the version of the statute in effect before July 1, 2005.

a fact-specific inquiry without first requiring the Terrazas Plaintiffs to exhaust their administrative remedies.

Defendants' motion for summary judgment and supporting documentation supplements the arguments regarding exhaustion of administrative remedies that were previously presented in the parties' cross-motions regarding class certification [Doc. No. 37, 39], and Defendants' response to *Plaintiffs' Motion to Amend Complaint* [Doc. No. 32]. In prior rulings, I rejected Defendants' argument that Plaintiffs' amended pleading would be futile due to the failure of the Terrazas Plaintiffs to exhaust administrative remedies, but afforded the parties an opportunity for supplemental briefing on this issue as it pertains to class-certification. [Doc. No. 58.]

In their response to Defendants' motion for summary judgment based on the failure to exhaust administrative remedies, the Terrazas Plaintiffs reiterate some of the same arguments presented in the prior briefing noted above. They also assert that much of the factual basis for Defendants' motion is immaterial because the content of the IEPs for Plaintiff Astolfo Terrazas provides no legal justification for shortening or reducing his school days, and the decision to shorten or reduce his school days was made outside the IEP process based on a policy or practice of general applicability. According to the Terrazas Plaintiffs, the IDEA's administrative procedures do not provide an adequate remedy because the administrative tribunals lack the authority to change such a generally applicable policy or practice.

Plaintiffs' *Second Amended Complaint* also contains a prayer for injunctive relief. Defendants have moved for partial summary judgment with respect to this claim for injunctive relief based on their contention that there is no factual basis for concluding that Plaintiffs are likely to be subjected to a shortened school day at any time in the future.  In the absence of such facts, Defendants assert that Plaintiffs cannot establish the likelihood of substantial and immediate irreparable injury that is necessary to establish standing to sue under Article III of the United States Constitution.  Plaintiffs oppose this motion and contend that the requirements for Article III standing are satisfied with respect to their claim for injunctive relief in this case.

II.   **ANALYSIS**

A.   **Exhaustion of Administrative Remedies**

The Terrazas Plaintiffs admit that they have not exhausted their administrative remedies under the IDEA but assert that they should be excused from this requirement because of the nature of their claims and the specific context in which they are to be litigated. [Doc. No. 33, at 2; Doc. No. 90, at 2.]   The issue of exhaustion of administrative remedies was previously discussed in more general terms in the *Memorandum Opinion and Order* [Doc. No. 58] filed on January 28, 2005.  For the sake of clarity, some aspects of that discussion bear repeating here.

Failure to exhaust administrative remedies under the IDEA presents a jurisdictional issue.  See Cudjoe v. Indep. Sch. Dist. No. 12, 297 F.3d 1058, 1063 (10th Cir. 2002).  The general rule is that when a party raises a jurisdictional challenge based on evidence outside

the pleadings, the Court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." Holt v. United States, 46 F.3d 1000, 1003 (10th Cir.1995). A party's reliance on evidence outside the pleadings, however, may convert their jurisdictional challenge into a motion for summary judgment subject to the requirements of Fed. R. Civ. P. 56 when, as here, "'the jurisdictional question is intertwined with the merits of the case.'" Sivoza v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002) (quoting Wheeler v. Hurdman, 825 F.2d 257, 259 (10th Cir.1987)).

In this case, Defendants have presented their challenge to the Terrazas Plaintiffs' claims in the form of a motion for summary judgment. Under Fed. R. Civ. P. 56, the Court may enter summary judgment when the motion papers, affidavits, and other evidence submitted by the parties show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). A "genuine issue" exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party as to that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986). An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. See id. at 248.

When a motion under Fed. R. Civ. P. 56 pertains to a claim or defense for which the movant does not bear the burden of proof at trial, judgment is appropriate "as a matter of law" if the non-moving party has failed to make an adequate showing on an essential element

of that claim or defense.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Adler

v. Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998).  On the other hand,  when

the movant is also the party bearing the burden of persuasion at trial on the claim for which

he or she is seeking summary judgment, the movant must show that the record as a whole

satisfies each essential element of his or her case and negates any affirmative defenses in

such a way that no rational trier of fact could find for the non-moving party.  See 19 Solid

Waste Dep't Mechanics v. City of Albuquerque, 156 F.3d 1068, 1071 (10th Cir. 1998);

Newell v. Oxford Mgmt., Inc., 912 F.2d 793, 795 (5th Cir. 1990); United Missouri Bank of

Kansas City, N.A. v. Gagel, 815 F. Supp. 387, 391 (D. Kan. 1993).

In order to warrant consideration by the Court, the factual materials accompanying

a motion for summary judgment must be admissible or usable at trial (although they do not

necessarily need to be presented in a form admissible at trial).  See Celotex Corp., 477 U.S.

at 324; Wright-Simmons v. City of Okla. City, 155 F.3d 1264, 1268 (10th Cir. 1998).  "To

survive summary judgment, 'nonmovant's affidavits must be based upon personal knowledge

and set forth facts that would be admissible in evidence; conclusory and self-serving

affidavits are not sufficient.'"  Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir.

1995) (quoting Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir.1991)).  Thus, "[h]earsay

testimony cannot be considered" in ruling on a summary-judgment motion.  Gross v.

Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995); see also Starr v. Pearle Vision,

Inc., 54 F.3d 1548, 1555 (10th Cir. 1995) (applying this rule to inadmissible hearsay

testimony in depositions).

Apart from such limitations imposed by the Federal Rules of Evidence, it is not this Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the Court assumes the admissible evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all admissible evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

The dispositive issue on which Defendants seek summary judgment against the Terrazas Plaintiffs in this case is whether the these Plaintiffs' claims fall under any recognized exception that would excuse their failure to exhaust administrative remedies. The Tenth Circuit has held that exhaustion of administrative remedies is not required when the plaintiff does not seek relief that is available under the IDEA, *i.e.*, when the plaintiff only seeks redress for physical injuries and "makes no complaints regarding her current educational situation." Padilla ex. rel. Padilla v. Sch. Dist. No. 1, 233 F.3d 1268, 1274 (10th Cir. 2000). On a more general level, the Tenth Circuit also has cited or recognized exceptions to the exhaustion requirement "when administrative remedies would be futile, when they would fail to provide relief, or when 'an agency has adopted a policy or pursued a practice of generally applicability that is contrary to the law'" which "'thereby renders agency expertise and the factual development of an administrative record less important.'" Urban v. Jefferson County Sch. Dist. R-1, 89 F.3d 720, 724 (10th Cir. 1996) (quoting Ass'n for Cmty. Living in Colo. v. Romer, 992 F.2d 1040, 1044 (10th Cir. 1993)); see, e.g.,

Robinson v. Kansas, 117 F. Supp. 2d 1124, 1142-43 (D. Kan. 2000), aff'd, 295 F.3d 1183 (10th Cir. 2002).  Under these exceptions, "[a]dministrative remedies are generally futile or inadequate when plaintiffs allege 'structural or systemic failure and seek systemwide reforms.'"  Urban, 89 F.3d at 724 (quoting Romer, 992 F.2d at 1044).  "The same is true where plaintiffs assert violations of the IDEA's due process provisions."  Romer, 992 F.2d at 1044.

In determining whether one or more of these exceptions to the exhaustion requirement apply, courts must consider the important purposes that the exhaustion requirement is designed to serve.  See Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1304 (9th Cir. 1992).  These purposes include:

> "(1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics;  (2) allowing the full development of technical issues and a factual record prior to court review;  (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error."

Hayes v. Unified Sch. Dist. No. 377, 877 F.2d 809, 814 (10th Cir.1989) (quoting Ass'n for Retarded Citizens, Inc. v. Teague, 830 F.2d 158, 160 (11th Cir.1987) (citations omitted)).  Where these purposes are not served by requiring exhaustion of administrative remedies, this requirement may be excused.  See Hoeft, 967 F.2d at 1304.

Defendants assert that the Terrazas Plaintiffs' claims are analogous to those at issue in Romer, 992 F.2d at 1044, where the Tenth Circuit dismissed a class-action lawsuit based on the failure to exhaust administrative remedies.   The Romer plaintiffs alleged that the

Colorado Department of Education's (CDE's) "policies for extended school year ("ESY")
and extended school day ("ESD") services denied children with disabilities individualized
education programs tailored to each child's unique needs." Romer, 992 F.2d at 1042. "In
particular, they claim[ed] that CDE has denied them appropriately individualized IEPs
because its policies arbitrarily predetermine the duration of ESD and ESY services and use
a single criterion to determine eligibility for ESY services." Id. at 1043.

At the time Romer was decided, the IDEA and its implementing regulations did not
contain explicit requirements regarding ESD and ESY services. See Thomas F. Guernsey
and Kathe Klare, Special Education Law, § 8.6, at 121 (2d ed. 2001) (noting that ESY
requirements were added to the IDEA in 1997, and that agency regulations implementing
these requirements were added in 1999). Instead, the ESD and ESY requirements in
existence at the time Romer was decided were the result of judicial interpretations of the
IDEA. See, e.g., Johnson ex rel. Johnson v. Indep. Sch. Dist. No. 4, 921 F.2d 1022 (10th
Cir. 1990).

Under these judicial interpretations, "the federal statute's mandate of a 'free
appropriate public education' . . . includes the provision for a summer program [or ESY] *if
appropriate* under a child's IEP." Id. at 1030 (emphasis added). In order to determine
whether an ESD is appropriate for a particular child, the IEP team must consider and decide
"'whether the benefits accrued to the child during the regular school year will be
significantly jeopardized if he is not provided an educational program during the summer
months.'" Id. at 1028 (quoting Alamo Heights Indep. Sch. Dist. v. State Bd. of Educ., 790

-10-

F.2d 1153, 1158 (5th Cir.1986)).  At the time <u>Romer</u> was decided, this "significant jeopardy" test provided only a "'general standard'" that "'must be applied to the individual by [those drafting and approving the IEP] in the same way that juries apply other general legal standards such as negligence and reasonableness.'"  <u>Id.</u> (quoting <u>Alamo Heights Indep. Sch. Dist.</u>, 790 F.2d at 1158).  Relevant information to be used in applying this general standard included "not only retrospective data, such as past regression and rate of recoupment, but also . . . predictive data, based on the opinion of professionals in consultation with the child's parents as well as circumstantial considerations of the child's individual situation at home and in his or her neighborhood and community."  <u>Id.</u>

Because the version of the IDEA at issue in <u>Romer</u> created no entitlement to ESY or ESD services absent an individualized showing that such services are "appropriate" under a particular child's IEP, <u>see</u> <u>Johnson</u>, 921 F.2d at 1028, a challenge to a state agency's policies or criteria governing ESY or ESD services could not go forward without a "factually intensive inquiry into the circumstances of each individual child's case," <u>Romer</u>, 992 F.2d at 1044.  Such a factually intensive inquiry is "'best resolved with the benefit of agency expertise and a fully developed administrative record.'"  <u>Romer</u>, 992 F.2d at 1044 (quoting <u>Hoeft</u>, 967 F.2d at 1305).  For these reasons, the Tenth Circuit declined to excuse the plaintiffs from exhausting their administrative remedies before filing suit in <u>Romer</u>.

I conclude that the Terrazas Plaintiffs' claims are distinguishable from those at issue in <u>Romer</u> in the following respects.  First, the Terrazas Plaintiffs are challenging Defendants' decision to provide a school day for certain categories of students with disabilities that is

reduced or shortened in comparison to the length of the school day for regular education students.  The Terrazas Plaintiffs are not claiming an entitlement to an extended school day or extended school year that is longer than that afforded to regular education students.

This distinction is significant because unlike ESD or ESY services, the length of the regular school day to which all students are presumptively entitled under state and federal law is not determined by a general standard of "appropriateness" which depends on the specific facts of each case. Rather, the presumptive length of the regular school day is established by statutory minimums which apply to both disabled and non-disabled students. See N.M. Stat. Ann. § 22-2-8.1 (Michie 2004); N.M. Admin. Code tit. 6.30.2 § 10(H) (2004).  To the extent that Plaintiff Astolfo Terrazas was subjected to a general practice or policy of reducing his school day below the statutory minimums afforded to his non-disabled peers, this practice or policy may implicate claims under the non-discrimination provisions of the Title II of the ADA and Section 504 of the Rehabilitation Act, in lieu of or in addition to a claim under the IDEA.  See 34 C.F.R. § 104.33(b)(1) (2005) (interpreting Section 504 of the Rehabilitation Act as requiring "the provision of regular or special education and related aids and services  that . . . are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met"); Urban, 89 F.3d at 727-28 (explaining that "Title II of the ADA adopts the substantive standards of Section 504 of the Rehabilitation Act" in this context); New Mexico Ass'n for Retarded Citizens v. New Mexico, 678 F.2d 847, 853 (1982) (concluding that a federally-funded education system may violate Section 504 when the school system's

-12-

practices "preclude the handicapped from obtaining system benefits realized by the nonhandicapped").

The applicability of these statutory minimums and non-discrimination requirements to students with disabilities is acknowledged in a memorandum from the State Superintendent of Education dated November 13, 2002, which states that:

> State law and the State Board of Education Standards for Excellence establish the minimum length of school days for students in New Mexico's public schools and authorize local districts to exceed (but not go below) the minimums.  Whatever a district decides, federal nondiscrimination laws require that students with disabilities have school days of the same length as other students unless a shorter day is educationally justified to meet a particular student's special needs, as determined and documented by the individualized educational program (IEP) team.

[Ex. 10 to Doc. No. 23 (footnotes omitted).]  This statement accords with a recent opinion of the Ninth Circuit Court of Appeals, which applied similar statutory minimums under California law and noted that:  "The United States Department of Education, Office of Civil Rights ("OCR"), has repeatedly held that a blanket policy of shortened school days for disabled students violates section 504 [of] the Rehabilitation Act and the ADA." Christopher S. ex rel. Rita S. v. Stanislaus County Office of Educ., 384 F.3d 1205, 1212 (9th Cir. 2004) (citations omitted).

In this case, it is alleged that Defendants subjected Plaintiff Astolfo Terrazas to a blanket policy of reducing or shortening his school days below the statutory minimums to which all students are presumptively entitled.  Defendant's application of a blanket policy presents a legal question that is not necessarily intertwined with a substantive evaluation of

the merits of the IEPs for Plaintiff Astolfo Terrazas.  This is particularly the case where an IEP is silent as to any justification for a reduced school day or time.  Insofar as Plaintiffs have presented evidence that Astolfo Terrazas was subjected to a shortened or reduced school day, and the need for such a shortened or reduced school day was not spelled out in the IEPs for the relevant time period, then such may, with other supporting or circumstantial evidence, support an inference that the shortened or reduced school day instead resulted from a blanket policy or practice of general applicability and not an individualized determination of this Plaintiff's educational needs.

Under these circumstances, I conclude that exhaustion of administrative remedies is not required if the justification for the reduced or shortened school day depends on the legality of a blanket policy or practice of general applicability, and not on a substantive evaluation of the appropriateness of specific educational choices reflected in an IEP.  In the absence of a legal justification for such a blanket policy or practice, or express language in the relevant IEPs to explain and document the need for a reduced or shortened school day, it is reasonable to infer that there has been a structural or systemic failure to provide the individualized consideration and parental participation required under the IDEA, which in turn may provide the basis for a claim of discrimination under Section 504 of the Rehabilitation Act and Title II of the ADA.

A challenge to such a blanket policy or practice of general applicability that entails a structural or systemic failure to abide by federal nondiscrimination laws falls under a recognized exception to the requirement of exhausting administrative remedies.  See

Christopher S. ex rel. Rita S., 384 F.3d at 1212; Urban, 89 F.3d at 724; Romer, 992 F.2d at 1044; Robinson, 117 F. Supp. 2d at 1142-43.  Therefore, Defendants' motion for summary judgment as to the Terrazas Plaintiffs' claims is denied in part with respect to this challenge.

I reach a different conclusion to the extent that there is undisputed evidence in the relevant IEPs for Plaintiff Astolfo Terrazas which shows that these IEPs expressly provide for a reduced or shortened school day.  If the relevant IEPs do so provide, then I agree with Defendants that the Terrazas Plaintiffs must exhaust their administrative remedies before they may challenge the appropriateness of such IEP provisions in this Court.  Exhaustion is required with respect to such a challenge because it entails a substantive evaluation of the appropriateness of the educational choices made by the IEP team, which necessarily involves consideration of agency expertise and development of a factual record on technical issues unique to this Plaintiff.

With their motion papers, Defendants have supplied copies of several IEPs for Plaintiff Astolfo Terrazas.  Defendants have not, however, pointed out any express language in these IEPs that calls for reduced or shortened school days or explains why they would be justified.  Nevertheless, the Court has reviewed these IEPs and has found one instance in which a reduced or shortened school day is addressed hypothetically.  The IEP dated January 7, 1999, and attached to Defendants' motion papers as Exhibit 4, notes the occurrence of "outbursts" or "behavior incidents" involving Plaintiff Astolfo Terrazas while riding the school bus and states that the IEP team "discussed the possible need for an abbreviated day in the future in order to put him on an individual bus run."  [Ex. 4 to Doc. No. 88, at 2.]

-15-

Insofar as the Terrazas Plaintiffs seek to challenge the merits of the IEP team's decision to implement an "abbreviated day" and "individual bus run" during the period covered by the IEP dated January 7, 1999, I conclude that they must first exhaust their administrative remedies because this decision was made in the specific context of formulating an IEP rather than as a result of a blanket policy generated outside the IEP process. Defendants' motion for summary judgment based on the Terrazas Plaintiffs' failure to exhaust administrative remedies is granted in part with respect to any challenge to this particular decision of the IEP team.

Defendants contend that despite the absence of any specific express language regarding reduced or shortened school days in the IEPs for Plaintiff Astolfo Terrazas (except as noted above), a generic justification for such reductions can be inferred from other language in the IEPs. According to Defendants, the Court should require exhaustion of administrative remedies so that this inference can be explored more thoroughly at the administrative level before any judicial review is undertaken.

Defendants' argument rests on the premise that in order to determine whether a student's school day has been shortened or reduced in comparison to other students, one must measure the amount of instructional time that the student receives while at school, and not simply track the student's arrival and departure times at the school campus. If one accepts the premise that instructional time is the proper measure of the length of a student's school day, then Defendants assert that one must make a fact-specific inquiry into each Plaintiff's IEPs to determine how much instructional time the student actually received

during each school day.  Thus, for example, when a student's IEP calls for instruction on such basic skills as eating lunch or going to the bathroom, and such skills are taught during the lunch period, passing periods, and recesses when the student's non-disabled peers are not receiving the same type of instruction, then Defendants claim it is appropriate to count the lunch period, passing periods, and recesses as equivalent to an extra class period for that student.  Defendants further claim that such an extra class period adequately compensates the student for any lost instructional time resulting from an early dismissal or a late arrival at the school.

In the case of Plaintiff Astolfo Terrazas, Defendants have presented evidence that his IEPs for the past several years call for instruction on basic skills which may be taught during portions of the school day when his non-disabled peers were not receiving instruction.  [Ex. 2-7 to Doc. No. 88.]  Accordingly, they assert that the instruction he received during lunch, recess, and passing periods should be taken into consideration in determining whether he has received equal or lesser instructional time than his non-disabled peers.  Insofar as measuring instructional time in this manner entails drawing inferences from a fact-specific inquiry regarding the contents of this Plaintiff's IEPs for the past several years, Defendants contend that exhaustion of administrative remedies is required to develop a sufficient factual record for a court to review.

The problems with this argument are twofold.  First, there is no undisputed factual basis to support the conclusion that the IEP team actually calculated the amount of instructional time Plaintiff Astolfo Terrazas was receiving and used such calculations to

determine the length of his school days.  Rather, the notion of using such calculations to justify a reduced or shortened school day appears to be a *post hoc* rationalization by Defendants, rather than an express component of this Plaintiff's IEPs.

In support of these *post hoc* rationalizations, counsel for Defendants has highlighted several provisions in the IEPs for Plaintiff Astolfo Terrazas which appear to identify educational goals or objectives that might have been accomplished during lunch, passing periods, or recess.  [Ex. 2-7 to Doc. No. 88.]  But Defendants have identified no language in these IEPs which shows that the IEP team ever specifically decided to reduce or shorten the overall length of this Plaintiff's school days based on its calculation of the instructional time devoted to these goals or objectives.  The evidence presented by Plaintiffs suggests that the reduced or shortened school day instead resulted from a policy or practice of general applicability based on other factors, such as the perceived need for a planning period or different bus schedules.  [Ex. 1-7 to Doc. No. 90.]

To the extent that a calculation of instructional time could provide a justification for dismissing a disabled student from school earlier than other students, Defendant Hines has acknowledged that such justifications need to be spelled out in the specific context of an IEP. In a memorandum dated November 8, 2002, she states that:  "If an IEP team has determined that lunch, passing periods, and/or recess is counted as instructional time, then the IEP team needs to document this within the IEP."  [Ex. G to Doc. No. 22.]  The memorandum further states that:  "It is essential that everyone understand that all decisions regarding any deviation from the normal school day be made on an individual basis and documented by the student's

IEP team in the IEP."   [Id.]   The IEPs for Plaintiff Astolfo Terrazas that Defendants submitted with their motion papers do not appear to meet these requirements.

The second problem with Defendants' theory of counting instructional time is that it has been expressly rejected by the State Director of Special Education.  In a memorandum dated January 3, 2003, the State Director writes that:

> It has come to our attention that in some districts, lunch, passing periods, recess, and/or teacher preparation periods are being counted as 'instructional time' for some students.  This practice is clearly outside the bounds of state standards and must stop.  While we recognize that certain educational goals and objectives for certain students may be addressed during these times, this time cannot be used to shorten the student's school day.
>
> Students with disabilities will benefit and learn during lunch, recess, and passing periods just as students without disabilities benefit and learn during these times and this should be reflected in the student's IEP.  Lunch, recess, and passing periods may provide certain students unique opportunities to attain goals and objectives and may be used, as appropriately defined through the IEP, to attain educational outcomes.  However, just because a student is learning during lunch, recess, or passing periods, does not mean that there exists an allowable justification for shortening the school day.

[Ex. 11 to Doc. No. 23.]   The State Director's memorandum shows that insofar as determining whether lunch and recess may be counted as instructional time requires administrative expertise, the State Director of Special Education has already made a determination on this subject, and Defendants have been afforded the opportunity to formulate a response to that determination.  Thus, it is not necessary to require the Terrazas Plaintiffs to exhaust administrative remedies for this purpose.

The State Director's memorandum also underscores the extent to which the Terrazas Plaintiffs' legal challenge to the shortened or reduced school day involves generally

applicable policies or practices that may require systemwide reform, rather than merely fact

questions dependent on the decision-making of an IEP team reflected in a particular child's

IEP.  The centrality of the legal question regarding such generally applicable policies or

practices, which allegedly involve a systemic or structural failure to comply with the IDEA's

individualization requirement and Section 504's nondiscrimination requirement, distinguishes

the Terrazas Plaintiffs' claims in this case from the fact-specific ESD and ESY claims at

issue in <u>Romer</u>, 992 F.2d at 1044.

   This case is also distinguishable from <u>Romer</u> because the claims of the Terrazas

Plaintiffs are joined with the claims of another set of Plaintiffs who have already exhausted

their administrative remedies under the IDEA.  This fact is significant because the <u>Romer</u>

Court did "not hold that every plaintiff in a class action must exhaust the IDEA's

administrative remedies." <u>Id.</u> at 1045.  "Even where exhaustion is necessary, the exhaustion

of a few representative claims may be sufficient to secure statutory compliance and, if not,

would at least serve the purposes of the exhaustion requirement and properly frame the issues

for judicial review." <u>Id.</u>  (citing <u>Hoeft</u>, 967 F.2d at 1308, and <u>Teague</u>, 830 F.2d at 161- 62).

   In this case, the question whether the length of a student's school day may be

measured by counting lunch periods, passing periods, or recesses as instructional time, as

well as the broader question of whether Defendants may categorically shorten or reduce the

school day for certain types of students on a programmatic level without going through the

IEP process, were addressed in the administrative proceedings conducted with respect to

Plaintiff May.  To the extent that there is a factual component to these questions that would

implicate agency expertise or necessitate the development of an administrative record on technical issues, I conclude that the exhaustion of administrative remedies as to Plaintiff May is sufficient to properly frame the matter for judicial review as to the Terrazas Plaintiffs as well.

For these reasons, Defendants' motion for summary judgment based on the Terrazas Plaintiffs' failure to exhaust administrative remedies is denied in part with respect to the claim that Defendants subjected Plaintiff Astolfo Terrazas to a reduced or shortened school day based on a generally applicable policy or practice rather than an individualized determination that is documented in the relevant IEPs.  Plaintiffs have presented evidence which creates one or more disputed issues of material fact concerning the existence of such a policy or practice.  Whether Defendants may pursue a generally applicable policy or practice of shortening or reducing this Plaintiff's school days outside the IEP process presents a legal question that is not answered by the decision-making of the IEP team reflected in the IEP documentation submitted with Defendants' motion papers.

At this time, I defer ruling on how the disposition of Defendants' summary-judgment motion affects particular Defendants or particular counts listed in the Terrazas Plaintiffs' pleadings.  I also defer ruling on how the disposition of this motion affects the issue of class-certification.

I decline to resolve these issues at this juncture because the question whether the IDEA's exhaustion requirement should be excused with respect to a particular class or subset of Plaintiffs or Defendants may be intertwined with the merits of the Plaintiffs' substantive

claims against those Defendants.  If, as in the case of the IEP for Astolfo Terrazas dated January 7, 1999 [Ex. 4 to Doc. No. 88], there is specific language reflecting a decision by the IEP team to shorten or reduce a student's school day, then exhaustion of administrative remedies is required before that particular decision is subject to judicial review.  A failure to exhaust administrative remedies may result in a dismissal of any challenge to such decisions by the IEP team, and any Defendant whose role in this litigation is based solely on his or her participation or involvement with the IEP team responsible for such decisions likewise may be subject to dismissal.   But where specific language calling for a shortened or reduced school day is missing from the IEP, as in the case of most of the IEP documentation for Plaintiff Astolfo Terrazas, then exhaustion of administrative remedies is not required so long as there is evidence of record supporting a reasonable inference that the student was subjected to a shortened or reduced school day based on a generally applicable policy or practice that did not result from the IEP process.

A particular Defendant may, of course, move for summary judgment based on the absence of evidence linking him or her to the creation of that policy or practice or its implementation with respect to a particular Plaintiff.  As indicated in the *Memorandum Opinion and Order* [Doc. No. 78] filed on March 31, 2005, the individual Defendants are not precluded from reasserting the defense of qualified immunity with respect to any remaining claims in Plantiffs' amended pleading.

B.    **Plaintiffs' Standing to Pursue Injunctive Relief**

Defendants also have moved for partial summary judgment with respect to Plaintiffs' claims for injunctive relief on the grounds that Plaintiffs lack standing to pursue such claims under Article III of the United States Constitution.  In support of their motion, Defendants cite the general principle that in order to have standing to pursue injunctive relief, a plaintiff must establish "a likelihood of substantial and immediate irreparable injury" in the future if such relief is not granted.  City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983). Defendants contend that Plaintiffs cannot establish such a likelihood of future injury in this case because the alleged practice or policy of shortening school days for students with disabilities based on considerations outside the IEP process was discontinued several years ago.

I find there is ambiguity in Defendants' motion because it refers only to "injunctive relief" in a generic sense without reference to the specific configuration of injunctive relief that Plaintiffs request in their *Second Amended Complaint*.  Insofar as the generic reference to "injunctive relief" in Defendants' motion is directed at Plaintiff Christina May's standing to pursue an injunction regarding her current arrival and departure times at Valley High School, I conclude that such a motion is unnecessary because the Court's prior rulings already preclude Plaintiffs from amending their pleadings to assert claims based on a "different" or "altered" school day in this civil action, where the overall length of the student's school day (as measured by arrival and departure times) is greater than or equal to that of regular education students.  [Doc. No. 78.]  Nevertheless, I also conclude that

-23-

Defendants' motion raises a jurisdictional issue that requires further analysis of the claims which remain in the *Second Amended Complaint*.

The proper analysis of this issue necessarily begins by identifying the specific forms of injunctive or equitable relief requested in the *Second Amended Complaint*. The prayer for relief in Plaintiffs' *Second Amended Complaint* requests "compensatory education commensurate with each student's lost educational hours resulting from Defendants' illegal actions." [Doc. No. 79, at 12.] In addition, the *Second Amended Complaint* requests that the Court "[e]njoin Defendants and their agents and employees from any further discrimination against students with disabilities in ISP programs or BIP programs or elsewhere and require APS to eradicate all vestiges of illegally shortening a student's school day on the basis of program placement or disability label." [Doc. No. 79, at 12.] The latter request is logically connected to the former insofar as an injunction against further efforts to illegally shorten Plaintiffs' school days may be necessary to ensure the enforcement of an award of compensatory education.

In order to pursue such relief in this civil action, Plantiffs must meet three general requirements for Article III standing articulated by the Supreme Court. Under the first of these requirements, Plaintiffs must demonstrate an "injury in fact," which is "concrete," "distinct and palpable," and "actual or imminent." Whitmore v. Arkansas, 495 U.S. 149, 155 (1990) (citation and internal quotation marks omitted). Second, Plaintiffs must establish "a causal connection between the injury and the conduct complained of--the injury has to be 'fairly trace[able] to the challenged action of the defendant, and not ... th[e] result [of] some

-24-

third party not before the court.'"  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561

(1992) (quoting Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41-42

(1976)).  Third, Plaintiffs must show a "'substantial likelihood' that the requested relief will

remedy the alleged injury in fact."  Vermont Agency of Natural Resources v. United States

ex rel. Stevens, 529 U.S. 765, 771 (2000) (quoting Simon, 426 U.S. at 45).

The Tenth Circuit has noted that the "'injury in fact' requirement is satisfied

differently depending on whether the plaintiff seeks prospective or retrospective relief."

Tandy v. City of Wichita, 380 F.3d 1277, 1283 (10th Cir. 2004).  "[A] plaintiff must

demonstrate standing separately for each form of relief sought."  Id. at 1284.  "To seek

prospective relief, the plaintiff must be suffering a continuing injury or be under a real and

immediate threat of repeated injury."  Id. at 1283.

In Defenders of Wildlife, 504 U.S. at 564, the plaintiffs' declarations that they

intended to visit and undertake research at a particular location at some indefinite time in the

future did not establish the "injury in fact" required for standing to sue for injunctive relief

involving threatened or endangered species having a geographic nexus with that location.

Similarly, in Lyons, 461 U.S. at 101-02, the mere possibility that police might stop the

plaintiff for a traffic violation in the future and employ a chokehold during that stop did not

establish the "injury in fact" required for standing to sue for an injunction barring the police

from future use of chokeholds.  In both of these instances, the plaintiffs failed to show that

the threatened injury was particularized and imminent, and in the absence of such a showing,

-25-

the plaintiffs also could not demonstrate a substantial likelihood that an injunction would remedy the alleged injury.

I conclude that Plaintiffs' claims for injunctive relief in this case are distinguishable from those at issue in Lyons and Defenders of Wildlife in several respects. To begin with, the continuing injury occasioned by a failure to remedy a child's loss of public education is not the same as the type of discrete physical injury occasioned by the police officer's chokehold at issue in Lyons, 461 U.S. at 102, or the injury to aesthetic or vocational interests in observing threatened or endangered species at issue in Defenders of Wildlife, 504 U.S. at 564. Unlike the injuries at issue in those cases, it is reasonable to infer that when a child is injured by past illegal action of shortening the child's school day, that injury is accompanied by continuing, present adverse effects in the form of specific educational deficits that are likely to persist throughout the child's adult life unless redressed by a form of prospective, injunctive relief such as compensatory education. A child's education necessarily involves an ongoing process which, by design, is intended to impact and influence the remainder of that child's life.

Plaintiffs alleged injuries in this case also are distinguishable from those at issue in Lyons and Defenders of Wildlife because Plaintiffs' continued enrollment with APS is more than just a speculative possibility. Defendants do not dispute that Plaintiff Christina May is presently 16 years old; that she continues to be enrolled as an APS student; and that she will be eligible for such continued enrollment for several more years. Thus, her continued enrollment with APS cannot be dismissed as a "mere 'someday intention.'" Tandy, 380 F.3d

at 1284. Rather, it is substantially likely that Plaintiff May will continue as an APS student in the foreseeable future and be subjected to whatever policies or practices the school district employs with respect to arrival and departure times for students with disabilities, and with respect to providing compensatory education as a remedy for lost school time in the past.

In the IDEA due-process hearings regarding Plaintiff May that preceded this lawsuit, evidence was presented from which the Administrative Appeal Officer (AAO) found that: "Prior to December 2, 2002, School dismissed severely disabled students at 2:30 p.m. but non-disabled students were not dismissed until 3:05 p.m." [Ex. 7 to Doc. No. 23.] The AAO also found that: "From November 20, 2002, to December 2, 2002, . . . Student's day was shortened solely on the basis of Student's disability and not on the basis of any individual need for a shortened day. The parties stipulated that no documentation in Student's November 18, 2002, IEP justified a shortened school day." [Ex. 7 to Doc. No. 23.]

Based on these findings, the AAO concluded that APS violated Section 504 of the Rehabilitation Act but declined to award compensatory education to remedy this violation because it was limited to the first six of Plaintiff May's school days at APS. In the *Second Amended Complaint*, Plaintiff May contends that compensatory education is an appropriate equitable remedy for this violation and seeks judicial review of the AAO's conclusion to the contrary. [Doc. No. 79, at ¶¶ 30, 31.] Defendants deny this contention and thus far have declined to provide compensatory education. [Doc. No. 83, at ¶¶ 30, 31.]

I conclude that, for purposes of Defendants' summary-judgment motion, Plaintiff May has made a legally sufficient showing that she is aggrieved by the denial of compensatory

education and that she meets both the statutory and constitutional requirements for seeking judicial review of the AAO's determination with respect to this issue in the broader context of this civil action.  Insofar as a loss of education resulting from a shortened school day creates a specific educational deficit that continues to adversely affect the remainder of a child's life unless remedied, such a loss constitutes a continuing injury that may warrant prospective, injunctive relief in the form of compensatory education.

In this regard, courts have recognized that "compensatory education is not a contractual remedy, but an equitable remedy, part of the court's resources in crafting 'appropriate relief'" under the IDEA.  Parents of Student W v. Puyallup Sch. Dist. No. 3, 31 F.3d 1489, 1497 (9th Cir. 1994); accord Reid ex rel. Reid v. Dist. of Columbia, 401 F.3d 516, 523 (D.C. Cir. 2005).  "Compensatory education involves discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a given period of time to provide a FAPE to a student."  G ex rel. RG v. Ft. Bragg Dependent Schs., 343 F.3d 295, 309 (4th Cir. 2003); accord Reid ex rel. Reid,  401 F.3d at 523.

These authorities support the conclusion that Plaintiff May has standing to pursue a claim for compensatory education, which is a form of prospective, injunctive, and equitable relief.  For purposes of defeating Defendants' motion for partial summary judgment, Plaintiff May has shown a substantial likelihood that such prospective, injunctive, and equitable relief may remedy a concrete and particularized injury-in-fact, namely the loss of time at school entailed by the shortened school day that is reflected in the record of the administrative

proceedings regarding this Plaintiff.  Defendants' assertion that this loss was *de minimis* is relevant to the merits of Plaintiff May's claim but does not defeat her standing to pursue this claim.  Cf. Steel Co. v.  Citizens for a Better Environment, 523 U.S. 83, 91 (1998) (recognizing that "the failure of a cause of action does not automatically produce a failure of jurisdiction").

Due to his age, Plaintiff Astolfo Terrazas is currently enrolled as an APS student at an off-campus setting where Plaintiffs concede he is not likely to be subjected to future injury in the form of a school day that is shorter than that of regular education students. Nevertheless, the *Second Amended Complaint* asserts that Plaintiff Astolfo Terrazas was subjected to a shortened school day without legal justification for many years in the past, and therefore equitable relief in the form of compensatory education is sought for this Plaintiff as well.  [Doc. No. 79, at ¶¶ 33, 34.]  Subject to my ruling with respect to this Plaintiff's failure to exhaust administrative remedies, I conclude that Plaintiff Astolfo Terrazas also has met the requirements for Article III standing to pursue equitable relief in the form of compensatory education for the alleged continuing injury that resulted from being subjected to shortened school days in his past years as an APS student.

In addition to seeking equitable relief in the form of compensatory education, Plaintiffs request that the Court enjoin Defendants from reverting back to the alleged past practice or policy of shortening the school day for certain categories of students with disabilities based on considerations outside the IEP process, and require Defendants to eliminate any remaining vestiges of this alleged past practice or policy.  My consideration

of Plaintiffs' standing to pursue this claim is guided by the principle that "'[t]he essence of equity jurisdiction' is 'to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it.'" Reid ex rel. Reid, 401 F.3d at 523-24 (quoting Hecht Co. v. Bowles, 321 U.S. 321, 329 (1944)).   Under this principle, I conclude that the flexible nature of the Court's equity jurisdiction may require consideration of whether Plaintiffs' claim for compensatory education also entails a need to "require APS to eradicate all vestiges of illegally shortening a student's school day on the basis of program placement or disability label," insofar as such vestiges present an obstacle to providing any compensatory education that might be awarded.  [Doc. No. 79, at 12.]  If Plaintiffs have standing to pursue a claim for compensatory education, it follows that they also have standing to pursue whatever additional injunctive relief may be necessary to enforce an award of compensatory education.[2]

Defendants concede that their assertions regarding Plaintiffs' claims for injunctive relief are limited to the issue of Article III standing and do not rely on the related doctrine of mootness.  Cf. Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc., 528 U.S. at 167, 190 (2000) (distinguishing standing from mootness).  "The burden of establishing mootness

---

[2]As noted above, my conclusion that Plaintiffs have standing to pursue the equitable relief necessary to remedy the past practice of shortening school days for disabled students outside the IEP process is not intended to provide Plaintiffs with a mechanism for expanding the scope of their pleading to include injunctive relief directed at school days which are merely "different" or "altered" without being "shortened" or "reduced."  Regardless of my present ruling on Defendants' motion for partial summary judgment, my prior ruling on Defendants' motion to dismiss or strike allegations from the *First Amended Complaint* precludes Plaintiffs from seeking such relief in this civil action. [Doc. No. 78.]

by voluntary compliance is a heavy one." Tandy, 380 F.3d at 1291. "A request for prospective relief can be mooted by a defendant's voluntary compliance if the defendant meets the 'formidable burden' of demonstrating that it is 'absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" Id. (quoting Friends of the Earth, Inc., 528 U.S. at 190). In light of Defendants' continued reliance on the notion that the length of the school day can be measured by *post hoc* calculations of instructional time, as well as the fact that discovery on this issue has not yet been completed, I find it less than absolutely clear whether Defendants will return to a practice or policy of shortening the school days of disabled students for reasons not expressly articulated in each student's IEP. For all of the above reasons, Plaintiffs' claim for compensatory education and related equitable relief is not moot, and Plaintiffs have standing to pursue this claim. Defendants' motion for partial summary judgment on this claim is therefore denied.

My conclusion that Plaintiffs have standing to pursue their claims for compensatory education and related equitable relief is based on the presence of an actual case or controversy and is not intended to serve as a resolution of the merits of this controversy. As noted above, the determination of whether Plaintiffs have standing to pursue a claim is not the same as the determination of whether that claim is viable on the merits. See Steel Co., 523 U.S. at 91. Thus, for example, my ruling with respect to Plaintiffs' standing is not intended to preclude Defendants from litigating their theory that no compensatory education is warranted under the IDEA because the alleged failure to provide an individualized decision regarding the shortened school day did not result in the denial of a free appropriate

public education (FAPE) based on the amount of instructional time the Plaintiffs received. See Erickson v. Albuquerque Pub. Schs., 199 F.3d 1116, 1123 (10th Cir. 1999). On the other hand, Plaintiffs are not precluded from litigating a claim for compensatory education and related equitable relief under the other statutes and constitutional provisions at issue here even if the IDEA alone does not provide for such a remedy in these circumstances. See 20 U.S.C. § 1415(*l*); 34 C.F.R. § 104.33(b)(1).

      C.      **Status of Briefing on Class Certification**

In the *Memorandum Opinion and Order* [Doc. No. 58] filed on January 28, 2005, I stated that the parties would be afforded the opportunity to present supplemental briefing on the pending motions regarding class-certification in order to address whether and to what extent this issue would be affected by the amended pleading adding the Terrazas Plaintiffs. *Defendant Albuquerque Public Schools' Motion to Deny Class Certification* [Doc. No. 37] is largely premised on the assertion that there is no basis to certify a class action under Fed. R. Civ. P. 23 where the members of the proposed class have failed to exhaust their administrative remedies. This assertion also forms the basis for *Defendants' Motion for Summary Judgment on Plaintiff Terrazas' Claims for Failure to Exhaust Her Administrative Remedies* [Doc. No. 87] filed on May 26, 2005. Thus, insofar as Defendants' argument for denying class certification is based on the failure to exhaust administrative remedies, the subsequent briefing on their motion for summary judgment regarding the Terrazas Plaintiffs' claims has provided Defendants with an adequate opportunity to supplement this argument in response to Plaintiffs' amended pleading.

-32-

My ruling on Defendants' motion for summary judgment regarding the Terrazas Plaintiffs' claims, as well as other prior rulings in this case, have significantly narrowed the scope of the claims and defenses that remain at issue.  Meanwhile, the Magistrate Judge's recent *Discovery Order* [Doc. No. 91] has expanded the scope and timing of discovery on these remaining claims and defenses.  Thus, I conclude that the parties' motions regarding class-certification [Doc. No. 37, 39], and the related motion to strike exhibits [Doc. No. 43], no longer provide a basis for an informed ruling on this issue because they each apply the criteria for class-certification under Fed. R. Civ. P. 23 to a set of legal issues and factual contentions that no longer reflects the current posture of this case.

Rather than requiring the parties to supplement the previous briefing on the issue of class-certification, I conclude that it is more fair and efficient to deny the parties' motions regarding this issue without prejudice and allow them each to file one amended motion regarding class-certification that is more carefully tailored to the current posture of this case as well as any new evidence gleaned during discovery.  See In re Am. Med. Sys., Inc., 75 F.3d 1069, 1086 (6th Cir. 1996) (concluding that it is appropriate to defer ruling on class certification while discovery is pending if the existing record does not provide an adequate basis for resolving issues relevant to such certification); Meyers ex rel. Meyers v. Bd. of Educ. of San Juan Sch. Dist., 905 F. Supp. 1544, 1578 (D. Utah 1995) (denying motion for class certification without prejudice where further discovery and factual development may narrow the issues and affect the definitions of the putative class or classes).  The deadline for filing such amended motions shall be October 17, 2005.

In their amended motions, the parties should address whether class-certification is appropriate with respect to each remaining count in Plaintiffs' amended pleading and each remaining Defendant in this action, *i.e.*, whether there are common and typical questions of law or fact regarding all remaining counts and all remaining Defendants, or whether some particular counts or Defendants involve unique issues that are not appropriate for class-certification or require the creation of subclasses.[3]   The parties also should address the methodology by which the proposed class will be identified and defined, *i.e.*, how the parties propose to distinguish the proposed class of students who were subjected to a generally applicable policy or practice of shortening school days from other students whose school days were shortened as a result of specific individualized decisions that are expressly set forth in an IEP.[4]

### D.   New Pretrial Conference and Trial Dates

The *Discovery Order* [Doc. No. 91] filed on June 15, 2005, establishes new deadlines for the completion of discovery and the filing of pretrial motions.  These new deadlines made it necessary to vacate and reschedule the pretrial conference and trial dates.  In light of the new pretrial deadlines, the pretrial conference is reset for March 7, 2006, and the jury selection and trial is reset for April 11, 2006.

---

[3]In this regard, I note that Defendants have recently filed motions for summary judgment with respect to the individual Defendants and with respect to Plaintiff's claim for declaratory judgment. [Doc. No. 114, 116.]

[4]I note the existence of a pending discovery motion concerning this issue.  [Doc. No. 112.]

III.    <u>**CONCLUSION**</u>

For the foregoing reasons, Defendants' motion for summary judgment with respect to the Terrazas Plaintiffs' failure to exhaust administrative remedies is granted in part and denied in part, and Defendants' motion for partial summary judgment based on lack of standing to pursue injunctive relief is denied.  In light of these rulings and the Court's prior orders [Doc. No. 58, 78, 91], the parties' motions regarding class certification [Doc. No. 37, 39] and the related motion to strike exhibits [Doc. No. 43] are each denied without prejudice, and the pretrial conference and trial dates are rescheduled as indicated below.

**IT IS THEREFORE ORDERED** that *Defendants' Motion for Partial Summary Judgment on Lack of Standing Grounds* [Doc. No. 92] is **DENIED**.

**IT IS FURTHER ORDERED** that the *Defendants' Motion for Summary Judgment on Plaintiff Terrazas' Claims for Failure to Exhaust Administrative Remedies* [Doc. No. 87] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that *Defendant APS' Motion to Strike Exhibits* [Doc. No. 43] is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs' *Motion for Class Certification* [Doc. No. 39] is **DENIED WITHOUT PREJUDICE**, and Plaintiffs are granted leave to refile their motion pursuant to the instructions given above by no later than October 17, 2005.

**IT IS FURTHER ORDERED** that *Defendant Albuquerque Public Schools' Motion to Deny Class Certification* [Doc. No. 37] is **DENIED WITHOUT PREJUDICE**, and

Defendants are granted leave to refile their motion pursuant to the instructions given above by no later than October 17, 2005.

**IT IS FURTHER ORDERED** that the **PRETRIAL CONFERENCE** previously set for Tuesday, October 4, 2005, at 9:00 a.m. is hereby **VACATED** and **RESET** for Tuesday, March 7, 2006, at 9:00 a.m.

**IT IS FURTHER ORDERED** that the **JURY SELECTION/TRIAL** previously set for Wednesday, November 9, 2005, at 9:00 a.m. is hereby **VACATED** and **RESET** for Tuesday, April 11, 2006, at 9:00 a.m. on a trailing docket.

**SO ORDERED** this 30th day of September, 2005, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
UNITED STATES DISTRICT JUDGE