**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**JANETTE BARR-RHODERICK**,
as legal guardian and next friend of
Christina Janette May, a minor,
**ANGELICA TERRAZAS**, as parent
and next friend of Astolfo Terrazas,
a dependent person, and
for similarly situated students,

        Plaintiffs,

        vs.                                                                     No. CIV 04-0327 MCA/ACT

**THE BOARD OF EDUCATION OF
ALBUQUERQUE PUBLIC SCHOOLS**,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on *Plaintiffs' Second Motion for Class Certification* [Doc. 134] filed on October 17, 2005, and *Defendants' Motion to Strike Exhibits 1 and 2 to Plaintiffs' Reply Brief in Support of Second Motion for Class Certification* [Doc. 162] filed on December 8, 2005. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court determines that Plaintiffs meet the requirements of Fed. R. Civ. P. 23(b)(2) for certifying a class of special-education students currently enrolled at Albuquerque Public Schools (APS) for the purpose of asserting certain statutory claims for declaratory and equitable relief relating to their participation in APS's "intensive support program" (ISP) or "behavior

intervention program" (BIP) from the 2000-2001 school year forward, where the parents or guardians of such students have consented to the review of their educational records. Accordingly, Plaintiffs' motion is granted in part with respect to this category of claims and students only and denied in part insofar as Plaintiffs seek certification of a broader class or a broader range of claims.  Defendant's motion to strike exhibits attached to Plaintiff's motion is denied as moot, as the particular exhibits to which Defendant objects are not necessary to the Court's ruling on class certification.

## I.     BACKGROUND

The history of this litigation is set forth in previous rulings filed on January 28, 2005; March 31, 2005; September 30, 2005, and April 3, 2006.  [Doc. 58, 78, 121, 189.]  In those prior rulings, the Court determined that the interests of fairness and efficiency weighed in favor of deferring a ruling on the issue of class certification until the record was clarified through further discovery and the issues were narrowed through another round of dispositive motions.  See In re Am. Med. Sys., Inc., 75 F.3d 1069, 1086 (6th Cir. 1996) (concluding that it is appropriate to defer ruling on class certification while discovery is pending if the existing record does not provide an adequate basis for resolving issues relevant to such certification); Meyers ex rel. Meyers v. Bd. of Educ. of San Juan Sch. Dist., 905 F. Supp. 1544, 1578 (D. Utah 1995) (denying motion for class certification without prejudice where further discovery and factual development may narrow the issues and affect the definitions of the putative class or classes).

Under the current posture of this case, the Board of Education of Albuquerque Public Schools (APS) is the only remaining Defendant, and Plaintiffs' only remaining claims are for declaratory and equitable relief from alleged violations of the Individuals with Disabilities Education Act (IDEA), Section 504 of the Rehabilitation Act, and Title II of the Americans with Disabilities Act (ADA) occurring in APS's "intensive support programs" (ISP) or "behavior intervention programs" (BIP) from the 2000-2001 school year forward. For purposes of class certification, Plaintiffs' claims are further limited to those which challenge Defendants' alleged practice of reducing or shortening the school day for certain categories of special-education students based on systemic, school-wide policies (such as "bell schedules") rather than individualized determinations reflected in each student's "Individualized Education Program" (IEP).

## II.   ANALYSIS

Having defined and limited the scope and duration of Plaintiffs' claims in its prior rulings, the Court now turns to the separate and distinct question of whether Plaintiffs meet the requirements for class certification. "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Anderson v. City of Albuquerque, 690 F.2d 796, 799 (10th Cir.1982) (quotation omitted).

Although Plaintiffs bear the burden of proving that this action qualifies for class certification, the Court must engage in its own "'rigorous analysis'" of whether the four threshold requirements of Rule 23(a) are satisfied. Shook v. El Paso County, 386 F.3d 963,

-3-

968 (10th Cir. 2004) (quoting Gen. Tel. Co. of the S.W. v. Falcon, 457 U.S. 147, 161 (1982)) (additional citation omitted). In particular, the Court must carefully examine whether: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). If these four threshold requirements are met, then an additional inquiry is necessary to determine whether the action falls within one of the three types of cases set forth in Rule 23(b). See Shook, 386 F.3d at 971.

### 1. **Numerosity**

I begin my analysis with Rule 23(a)'s numerosity requirement. While there is "no set formula" for determining numerosity under this rule, "there must be presented some evidence of established, ascertainable numbers constituting the class" from which the Court may reach a "reasonable estimate [of] the number of class members who may be involved." Rex v. Owens, 585 F.2d 432, 436 (10th Cir. 1978). In this case, the parties disagree as to the practicality of various methods that might be employed to ascertain the identity of each member of the proposed class, particularly with respect to those who are not currently enrolled as ISP or BIP students at APS schools and who have not been enrolled in these programs for several years.

The Court's prior rulings may partially resolve that disagreement. Because the statute of limitations and the doctrine of laches preclude the named Plaintiffs from reaching alleged

-4-

violations that occurred before the 2000-2001 school year, and the only remaining claims are for declaratory and equitable relief, these Plaintiffs are not in a position to represent a class of students whose only attendance at APS schools occurred before that school year. While the issue may be characterized as one of adequate representation rather than numerosity, courts have held that class certification should be denied as to claims for which the proposed class representatives are subject to unique defenses (such as the statute of limitations) that predictably will become a major focus of litigation. See, e.g., Gary Plastic Packaging v. Merrill Lynch, 903 F.2d 176, 180 (2nd Cir.1990). It follows that students whose only attendance at APS schools preceded the 2000-2001 school year must be excluded from the proposed class, and it is unnecessary to identify them for purposes of calculating the size of the class.

      Nevertheless, the proposed class remains numerous enough to satisfy Rule 23(a) even if it includes only APS students who received ISP or BIP services at some point between the 2000-2001 school year and the present school year, and who remain enrolled at APS schools during the present school year. Defendants have represented that there are approximately 460 APS students who currently receive ISP or BIP services as of the fall semester of 2005. [Doc. 133, at 4.] The parties' recent review of IEPs for students who are currently enrolled as ISP or BIP students at APS schools may serve to confirm this estimate. [Doc. 185.] In addition, the Court will provide the parties an opportunity to gather and report information on other APS students who received ISP or BIP services in past school years dating back to 2000-2001 but who are now enrolled at other schools or programs within APS. Even if a

significant number of these students are excluded from the proposed class based on privacy concerns, the content of their IEPs, or the fact that they were never subjected to a shortened school day at a particular school or during a particular school year, there is likely to remain a class of students that is sufficient to satisfy the numerosity requirement of Rule 23(a).

### 2. **Commonality**

The other three requirements of Rule 23(a) (commonality, typicality, and adequacy of representation) "tend to merge" insofar as they all "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Falcon, 457 U.S. at 158 n.13. Commonality is an especially useful guidepost for determining whether maintenance of a class action is economical because where the "issues involved are common to the class as a whole" and "turn on questions of law applicable in the same manner to each member of the class," litigating those issues in a class action is likely to save "the resources of both the courts and the parties" that would otherwise be expended on a multiplicity of separate suits and administrative appeals by individual class members. Califano v. Yamasaki, 442 U.S. 682, 701 (1979).

To satisfy Rule 23(a), "commonality" requires only a single issue of law or of fact that is common to the class and is substantially related to the resolution of the litigation. See Realmonte v. Reeves, 169 F.3d 1280, 1285 (10th Cir. 1999); J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1288 (10th Cir. 1999); K.L. v. Valdez, 167 F.R.D. 688, 690 (D.N.M.1996).

"'That the claims of individual class members may differ factually should not preclude certification under Rule 23(b)(2) of a claim seeking the application of a common policy.'" J.B. ex rel. Hart, 186 F.3d at 1288 (quoting Adamson v. Bowen, 855 F.2d 668, 676 (10th Cir.1988)). On the other hand, a general allegation that an assemblage of different claims amounts to a "systematic failure" to obey various laws does not suffice to create a common question of law or fact for purposes of Rule 23(a). J.B. ex rel. Hart, 186 F.3d at 1289. "For a common question of law to exist, the putative class must share a discrete legal question of some kind." Id.

In this case, Defendant APS contends that the commonality requirement is not satisfied because there are a number of factual differences which distinguish each proposed class member's claim. For example, the evidence of record indicates that the setting of bell schedules and other practices relevant to determining the length of the school day may vary from school to school, from year to year, and from student to student. In addition, it will be necessary to review the language in a student's IEPs during the relevant time period in order to determine whether there is an individualized justification for a shortened school day contained in those IEPs. And if it is proven that there was an unlawfully shortened school day for a category of ISP or BIP students during a particular time frame, each student in that category may require an individualized review of his or her educational needs in order to determine whether, to what extent, and in what form compensatory education or other equitable remedies are warranted. See Reid v. District of Columbia, 401 F.3d 516, 523-24 (D.C. Cir. 2005).

I acknowledge that these factual differences may affect the manageability of a class action. Nevertheless, such concerns about manageability do not alter the conclusion that some of the claims on which Plaintiffs seek class certification satisfy the commonality requirement of Rule 23(a) insofar as they boil down to a logically related series of discrete legal questions that must be answered for students currently enrolled at APS who allege an actual or threatened loss of opportunity for public education (or for participation in developing an IEP) stemming from placement in the ISP or BIP during the 2000-2001 school year or later that was subject to a general policy or custom of setting bell schedules outside the IEP process, which resulted in a shortened school day in comparison to regular-education students.

The core legal question common to this class of students is how to measure the length of the school day for purposes of determining parity between disabled and non-disabled students. For example, Plaintiffs contend that the relevant statutes generally require bell schedules (which determine the overall length of the school day) to be used for this purpose unless the IEP for a particular student expressly provides an individualized justification for using a different measure. In contrast, Defendant APS asserts that in at least some instances the law allows school officials to measure the length of the school day in terms of instructional time, which may not correspond to the overall length of time the student spends on the school campus each day.

Another common legal question is whether the relevant statutes require differences in the length of the school day for special-education students to be expressly spelled out in

each student's IEP, or whether the law allows APS to infer a justification for a shortened school day for broad categories of students whose IEPs call for instruction on certain skills (such as eating or going to the bathroom) for which teaching opportunities typically arise during lunch or recess periods. And, if these questions are answered and an actual violation is proven, then the Court may be asked to determine what the proper procedure is for informing affected persons of the right to obtain, and then actually obtaining, an individualized determination of whether a student is entitled to compensatory education or other equitable relief where the shortened school day resulted from actions occurring outside the IEP process, and where the parties never had occasion to exhaust their administrative remedies as to this issue. While the *results* of this procedure or methodology may differ from one class member to another, the procedure or methodology itself presents a common question for purposes of Rule 23(a).

### 3. Typicality

Rule 23(a)'s typicality requirement also requires that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." East Texas Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 403 (1977) (quoting Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 216 (1974)); accord Rector v. City and County of Denver, 348 F.3d 935, 949-50 (10th Cir. 2003). To determine whether this requirement is satisfied with respect to the class members, one must first define exactly what interest and what injury is claimed by the class representatives.

In this regard, I note that there are some variations in the respective interests and injuries of the two groups of named Plaintiffs. Plaintiff C.J. May presents a situation where the student was only subjected to a shortened school day in an ISP for a relatively brief period of six school days, but she has exhausted her administrative remedies and is expected to continue her enrollment as an APS student for several years in the future. In contrast, Plaintiff Astolfo Terrazas presents a situation where the student is at or near the end of his public-school education and has never exhausted his administrative remedies, but the length of time during which he allegedly was subjected to a shortened school day in an ISP is considerably longer.

What is "typical" about the claims of the two sets of Plaintiffs named in the *Second Amended Complaint* is that they both present a situation where the student allegedly was subjected to a shortened school day while placed in ISP or BIP for *some* period of time after the 1999-2000 school year but before APS changed its policy during the 2002-2003 school year, and the student continued his or her enrollment as an APS student as of the date of the proposed class certification. I have no difficulty concluding that the named Plaintiffs' claims are typical of most other students who meet these criteria.

There are, however, a few exceptional circumstances which may apply to some of these students. First, Plaintiffs acknowledge that students whose IEPs specifically call for a shortened school day during the relevant time period should be excluded from the class, because such students have not suffered the same injury that Plaintiffs claim in this case.

These students must be excluded from the class because they do not meet the typicality requirement.

Second, there may be students who never were subjected to a shortened school day and who face no threat of a shortened school day in the foreseeable future. If, for example, a student never enrolled in ISP or BIP as an APS student until after the policy changes during the 2002-2003 school year were implemented, and the student is now scheduled to graduate or to attend another program (such as the one attended by Plaintiff Astolfo Terrazas) that is not located on a school campus with regular-education students, then that student has not suffered the same injury that the named Plaintiffs claim and faces no foreseeable prospect of incurring such an injury in the future. Students in this category also must be excluded from the proposed class because they do not meet the typicality requirement.

### 4. **Fairness and Adequacy of Representation**

The requirement that the class representatives fairly and adequately represent the interests of the other class members is perhaps the most important of the criteria for class certification set forth in Rule 23(a) because this requirement is grounded in the constitutional principle of protecting the other class members right to due process, see In re GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 784 (3d Cir. 1995), as well as the ethical principle that "class attorneys, purporting to represent a class, also owe the entire class a fiduciary duty once the class complaint is filed," id. at 801. In order to ensure that class actions adhere to these principles, the Court must ask two questions: "'(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2)

will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" Rutter & Wilbanks Corp. v. Shell Oil Corp., 314 F.3d 1180, 1187-88 (10th Cir. 2002) (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir.1998)); see also Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626 n. 20 (1997).

     In this case, the record indicates that there are some ISP and BIP students whose parents or guardians have raised privacy concerns and have declined to allow access to their educational records during discovery. [Doc. 185, 190.] I conclude that these students' interests are not the same as the named Plaintiffs because they place a greater value on the privacy of their educational records--an interest that the law recognizes as legitimate and worthy of protection. See 20 U.S.C. 1232g(b)(I). Moreover, these students' privacy interests are in conflict with the named Plaintiffs' interest in pursuing this litigation because, notwithstanding the assertion of such interests, Plaintiffs' counsel requests access to the educational records of these students for purposes of proving the merits of the claims asserted in this litigation, as well as the task of identifying which students are members of the class. Under these circumstances, I do not have confidence that the named Plaintiffs or their counsel will respect the privacy interests of students whose parents or guardians do not consent to the review of their educational records. Accordingly, I conclude that the named Plaintiffs cannot fairly and adequately represent students for whom the parties have not obtained consent to access educational records under the procedure set forth in the Court's discovery orders. [Doc. 168, 180.] These students must therefore be excluded from the proposed class.

In addition, there may be some students who were subjected to a shortened school day in prior school years but who are no longer enrolled in APS schools during the present school year when the Court is asked to rule on the class certification issue. For example, a student may have moved to one or more different states since enrolling at APS, or a student may have already graduated and transitioned to a program for disabled adults. In such cases, the lack of continued enrollment at an APS school creates "impediments to practical notice" that are akin to those of the "exposure-only" category of individuals that the Supreme Court recognized as inappropriate for class certification in Windsor, 521 U.S. at 628. In addition, the interests of students who are no longer enrolled with APS diverge from those of the named Plaintiffs because the named Plaintiffs are limited to seeking prospective relief in the context of a continuing relationship with APS's school campuses and/or IEP teams. Cf. Adler v. Duvall County Sch. Bd., 112 F.3d 1475, 1477-78 (11th Cir. 1997) (concluding that claims for declaratory and injunctive relief against school board were moot because the students had graduated and had "no legally cognizable need" for such relief). This context is completely lacking for students no longer enrolled with APS. For these reasons, I conclude that students no longer enrolled with APS during the current school year must be excluded from the proposed class.

With respect to the remaining pool of students who (1) have received ISP or BIP services from APS during the 2000-2001 school year or subsequent school years during which the allegedly shortened school day was in effect, (2) remain enrolled at APS schools during the current school year, and (3) have consented to the review of their educational

records under the procedure set forth in the Court's discovery orders, I conclude that Rule 23(a)'s requirement of fair and adequate representation is satisfied at this juncture. The record reflects that the named Plaintiffs and their counsel are sincerely committed to vigorously pursuing a common interest shared by such students, and I find that their resources, however limited, are not so precarious as to preclude them from accomplishing the task of representing such a class. The team of attorneys who have entered their appearances for the named Plaintiffs in this action will, therefore, be appointed as class counsel pursuant to Rule 23(g).

### 5. **Maintainability**.

In addition to satisfying the prerequisites for suing on behalf of a class under Rule 23(a), Plaintiffs also must show that this case falls into one of the categories recognized in Rule 23(b) in order to maintain a class action. Here the relevant category is provided in Rule 23(b)(2), which allows for class actions where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). The remaining claims for which Plaintiffs seek class certification fall into this category because they are limited to seeking declaratory and injunctive relief with respect to an APS policy or custom that is generally applicable to the class of students who meet the requirements of Fed. R. Civ. P. 23(a) as defined above.

The manageability of the proposed class is also a factor that the Court may consider under Fed. R. Civ. P. 23(b)(2). See Shook, 386 F.3d at 973. Indeed, the manageability of an

action is always a concern for a trial court under its inherent authority to regulate and properly manage its docket in the interest of judicial efficiency. See Roadway Express, Inc. v. Piper, 447 U.S. 752, 764-67 (1980) (recognizing that federal courts have inherent powers that extend beyond the Federal Rules of Civil Procedure); Martinez v. IRS, 744 F.2d 71, 73 (10th Cir. 1984) (similar).

Classes such as this one that are limited to seeking declaratory and injunctive relief under Rule 23(b)(2) may be easier to manage than some other categories of class actions. For example, Rule 23(c) does not necessarily require an elaborate notice to each individual member of a class certified under Rule 23(b)(2), and thus "many courts have found Rule 23(b)(2) well suited for cases where the composition of a class is not readily ascertainable; for instance, in a case where the plaintiffs attempt to bring suit on behalf of a shifting . . . population" at a particular facility. Shook, 386 F.3d at 972.

On the other hand, "courts also need to look to whether the class is amenable to uniform group remedies" under Rule 23(b)(2). See id. at 973. In this case, Defendant APS points out that a remedy of compensatory education cannot be uniformly applied to each member of the prospective class inasmuch as that remedy must be individualized and incorporated in each student's IEP. See Reid, 401 F.3d at 523-24. In addition, a specific form of notice to the class members who have been subjected to a shortened school day appears to be an integral part of the procedural relief that Plaintiffs seek in this case, inasmuch as their *Second Amended Complaint* is premised in part on the notion that the

-15-

alleged policy or practice of shortening the school day is illegal precisely because it was implemented outside the individualized, statutory due-process requirements of the IDEA.

For the reasons previously stated in the *Memorandum Opinion and Order* [Doc. 189] filed on April 3, 2006, I find that these considerations do not pose an insurmountable obstacle to fashioning a uniform and manageable remedy for the proposed class identified above. While it appears correct that the Court cannot fashion a uniform hour-for-hour formula for awarding compensatory education for each student in the class, it may still be possible to fashion a uniform procedural framework for providing notice and an opportunity to address the issue of compensatory education in the context of a particular student's IEP, where that student was at some point subjected to a shortened school day in past years dating back to the 2000-2001 school year. In addition, a uniform remedy may be possible with respect to declaring the illegality of, or enjoining, a policy or custom that infers the length of the school day by reference to instructional time rather than relying on bell schedules or the express language of an IEP.

To the extent there are manageability concerns about identifying and providing notice or particular remedies to a fluctuating population of APS students, those concerns can be addressed by refining (or even decertifying) the class at later stages of the litigation, if necessary, because Rule 23(c)(1)(C) expressly allows a class-certification order to be altered or amended at any time before final judgment. See Fed. R. Civ. P. 23(c)(1)(C) (advisory committee notes to 2003 amendments); Falcon, 457 U.S. at 160 (noting that an order of class certification is "inherently tentative," particularly during the period before any notice is sent

to members of the class). The Court will defer ruling on whether and to what extent notice to the class members is warranted under Rule 23(c)(2)(A) until after the parties have been afforded the opportunity to convene a settlement conference and to gather and report additional information relevant to identifying the members of the class.

At the status conference on April 4, 2006, Plaintiffs' counsel noted that there may be students who remain currently enrolled in APS neighborhood schools but who previously received ISP or BIP services at a different APS school at some prior time dating back to the 2000-2001 school year, when the allegedly shortened bell schedules may have been in effect. Counsel for Defendant APS estimated that it would take approximately one month to identify such students, and additional time may be necessary to determine whether their parents or guardians will consent to the review of their educational records. [Doc. 190.]

The Court will set a deadline of May 5, 2006, to gather and report information regarding the number of students who fall under the general category described in the preceding paragraph (*i.e.*, those who have been transferred from ISP or BIP schools to neighborhood schools during the relevant time period). In the meantime, I will refer the matter of convening a settlement conference, as well as any further discovery issues (including the procedure for obtaining consent to review educational records) pertaining to this newly identified category of students, to the assigned Magistrate Judge.

Finally, I express my concern about any tactics that might serve to delay the resolution of this matter for the purpose of decreasing the size of the certified class through graduation, disenrollment, or loss of educational records at the end of the current school year. Such

delay tactics will not be tolerated. The Court's goal is to work toward a resolution of this action that includes class members enrolled at APS during the 2005-2006 school year and that provides a remedy (if required) which can be implemented by the start of the next school year. If necessary, the Court will set a new date for a bench trial, and accompanying pretrial deadlines, consistent with this goal.

### III.    CONCLUSION

For the foregoing reasons, the Court will certify a class of special-education students currently enrolled at Albuquerque Public Schools (APS) for the purpose of asserting certain statutory claims for declaratory and equitable relief relating to their participation in APS's "intensive support program" (ISP) or "behavior intervention program" (BIP) from the 2000-2001 school year forward, where the parents or guardians of such students have consented to the review of their educational records. The scope and duration of the three statutory claims against Defendant APS which are the subject of this class certification are further identified in the Court's *Memorandum Opinion and Order* [Doc. 189] filed on April 3, 2006, and the team of attorneys identified in the *Second Amended Complaint* is appointed as class counsel. Defendant's motion to strike exhibits attached to Plaintiff's motion is denied as moot, as the particular exhibits to which Defendant objects are not necessary to the Court's ruling on class certification.

**IT IS THEREFORE ORDERED** that *Plaintiffs' Second Motion for Class Certification* [Doc. 134] is **GRANTED IN PART** and **DENIED IN PART** under the conditions specified above.

**IT IS FURTHER ORDERED** that *Defendants' Motion to Strike Exhibits 1 and 2 to Plaintiffs' Reply Brief in Support of Second Motion for Class Certification* [Doc. 162] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that, by no later than May 5, 2006, Defendant APS shall gather and report information identifying the number of students who received ISP or BIP services at APS schools in past years dating back to the 2000-2001 school year and who remain enrolled in other APS schools during the current school year.

**IT IS FURTHER ORDERED** that the matter of convening a settlement conference, as well as further discovery issues (including the procedure for obtaining consent to review educational records) pertaining to the new category of students identified by the above deadline, are referred to United States Magistrate Judge Alan C. Torgerson. The settlement conference should be scheduled prior to May 31, 2006.

**SO ORDERED** this 11th day of April, 2006, in Albuquerque, New Mexico.

 **M. CHRISTINA ARMIJO**
 UNITED STATES DISTRICT JUDGE